IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| ALISHA ROBBINS and AMBER GRANDSTAFF, on behalf of themselves and all others similarly situated, known and unknown,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>BLAZIN WINGS, INC. d/b/a BUFFALO WILD WINGS,<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 15-cv-06340<br>Hon. Charles J. Siragusa<br><br>**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' FIRST AMENDED CLASS AND COLLECTIVE ACTION COMPLAINT** |

## I.　　INTRODUCTION

　　This case is a putative nation-wide collective action under the Fair Labor Standards Act ("FLSA") and putative state-wide class action under the New York Labor Law ("NYLL"). Plaintiffs, former employees who worked in Defendant's restaurants in New York and Ohio, allege that, in each week of their employment, Defendant failed to pay them the appropriate minimum wage in violation of the tip-credit provisions of the FLSA and NYLL.

　　Defendant moved to dismiss Plaintiffs' initial Complaint because of its failure to meet basic pleading requirements. Plaintiffs subsequently filed the instant Amended Complaint asserting the same allegations and including additional factual details primarily addressing the type of work Plaintiffs allegedly performed while purportedly being undercompensated at the tip-credit rate.

1

But Plaintiffs' Amended Complaint still fails for a reason that Defendant identified in its first motion: Plaintiffs cannot sustain their across-the-board claims because they have not pleaded facts plausibly supporting them. Specifically, Plaintiffs concede that they were *not* paid exclusively at a sub-minimum wage tip-credit rate, yet they provide no facts concerning their varying rates of pay, the number of hours they worked, or their overall compensation. In failing to plead such facts, Plaintiffs fail to plead facts plausibly supporting their across-the-board claims. Even if, as Plaintiffs maintain, they were not properly compensated for certain work performed while they were working at a tip-credit rate, no minimum wage violation can occur if Plaintiffs' overall compensation (excluding tips) nonetheless meets or exceeds the minimum wage. But Plaintiffs have pleaded no facts showing that, accounting for their varying rates of pay, their overall compensation for all non-tipped work fell below the minimum wage in each week of their employment.

Plaintiffs' omission of this basic information renders their Amended Complaint deficient as a matter of law. For these reasons, and all of the reasons set forth below, the Court should dismiss Plaintiffs' Amended Complaint.

## II.   BACKGROUND

### A. Procedural History

#### i. Plaintiffs' Initial Complaint

Plaintiffs commenced this lawsuit on June 2, 2015. (Dkt. 1.) In their initial Complaint, Plaintiffs asserted claims against Defendant Blazin Wings, Inc. d/b/a Buffalo Wild Wings ("BWW") seeking damages for alleged "unpaid minimum wages" under

both the FLSA, 29 U.S.C. § 201, *et seq.* and NYLL § 650, *et seq.* (Compl. ¶¶ 1-2.) They alleged BWW has a "policy and practice" of paying "Tip-Credit Employees" a sub-minimum wage for work that is "unrelated to their tipped occupation" and a "policy or practice of requiring . . . Tip-Credit Employees" to perform related non-tipped work "for more than 20 percent of their time worked each shift." *Id.* ¶¶ 6-7 (emphasis removed). Plaintiffs appeared to assert claims related to every week they worked at BWW. (*Id.* ¶¶ 4, 6-7, 10-11, 49-50, 55(2)-56(2)[1]).

      ii.  BWW's Initial Motion to Dismiss

BWW filed a motion to dismiss the initial Complaint on July 23, 2015. (Dkt. 16.) BWW argued the Complaint failed to state a plausible claim for relief under both the FLSA and New York law because, among other things, Plaintiffs had failed to allege plausible facts regarding their work hours or the time they spent performing non-tipped work. (*Id.* at 10-12.) Further, BWW argued Plaintiffs failed to plead a plausible claim because they had not alleged that they were paid exclusively at a sub-minimum tip-credit rate, and had alleged no facts plausibly suggesting that the time they allegedly spent performing non-tipped work caused their average hourly wage to fall below the statutory minimum wage—as required to state a minimum wage violation under state and federal law. (*Id.* at 12-14.)

---

[1] The paragraphs in Plaintiff's initial Complaint were not sequentially numbered and several paragraph numbers appeared twice. *E.g., id.* 53-56. When citing these paragraphs, BWW appends a "(1)" when referring to the first time a paragraph number appears and a "(2)" when referring to the second time.

3

### B. Plaintiffs' Amended Complaint

On August 6, 2015—within the 21-day deadline for filing an amended complaint (Fed. R. Civ. P. 15(a)(1)(A))—rather than responding to Defendant's initial motion to dismiss, Plaintiffs filed their First Amended Class Action Collective Action Complaint ("Amended Complaint"). (Dkt. 21.)

In their Amended Complaint, Plaintiffs again allege that Defendant has an "illegal policy"—which they do not identify—of requiring tipped employees to performed non-tipped work that "(a) is unrelated to their tipped occupation or (b) exceeds 20 percent of their time worked each shift as a Tip Credit Employee." (Am. Compl. ¶ 18.) It also contains new allegations regarding the non-tipped duties Plaintiffs allegedly performed. (*Id.* ¶¶ 39-46, 52-57.) Despite the laundry list of alleged possible "related duties," Plaintiffs still fail to allege any specific workweek or workweeks upon which they base their claims that they were not paid the minimum wage. Indeed, as in the first Complaint, Plaintiffs appear to assert across-the-board claims related to every week they worked at BWW. (*Id.* ¶¶ 36-52.)

Moreover, the Amended Complaint still does not contain any allegations regarding the number of hours either Plaintiff Robbins or Plaintiff Grandstaff worked in any workweek. Nor do their allegations specify the number of hours they allegedly worked performing non-tipped work. Instead, they allege that they "typically spent approximately 40 percent" of their "work time" performing duties "that had no customer interaction and that did not generate tips." (*Id.* ¶¶ 38, 51.)

4

However, the Amended Complaint suggests that this "work time" does not include all of the time Plaintiffs spent working for BWW. More specifically, Plaintiffs allege this "work time" pertains only to time spent working "[w]hile" BWW was paying them "at the sub-minimum tip credit wage." (Am. Compl. ¶¶ 38, 51.) But the Amended Complaint concedes that Plaintiffs were not paid exclusively at a tip-credit rate. For example, it asserts that neither Plaintiff was paid at a tipped credit rate for "brief initial training periods." (*Id*. ¶¶ 37, 50.) Even so, it provides no factual details about the rate of pay for these periods, their frequency, the number of hours involved, or any other facts showing that Plaintiffs' overall compensation fell below the minimum wage during those workweeks.

The Amended Complaint also alleges that Plaintiff Robbins, for the entire period of her employment at BWW, worked as a hostess and cook in addition to working as a server and Wing Certified Trainer. (*Id.* ¶ 36.) Further, the Amended Complaint concedes that Robbins was paid "at least the full applicable minimum wage to work as a hostess and cook," suggesting that only her duties as a server and Wing Certified Trainer are germane to her claims. (*Id.* ¶ 37.) But the Amended Complaint, again, does not make any factual allegations concerning the applicable rate of pay or the number of hours she worked while being paid at the non-tipped rate in the server and Wing Certified Trainer positions. Instead, the Amended Complaint tries to whitewash these deficiencies by alleging that "none of the allegations in this lawsuit apply to Plaintiff's employment in those capacities." (*Id.* ¶ 37.)

5

Tellingly, similar to its omission of allegations regarding work hours, the Amended Complaint includes no allegations regarding Robbins' or Grandstaff's compensation on a workweek basis. Indeed, although, like the first Complaint, the Amended Complaint includes allegedly "representative" pay records for Robbins (*Id.* ¶ 37 & Ex. A), Plaintiffs again omit facts pertaining to the amount of time they clocked in and out and performed work at non-tipped credit rates undermining the notion they were not paid at least the minimum wage in each workweek.

### III.  STANDARD

A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). This "requires more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action . . . ." *Id.*

To meet these standards, a plaintiff must provide factual allegations sufficient to raise a right to relief above the speculative level. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In general, factual allegations must be accepted as true. *Iqbal*, 556 U.S. at 678. But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not entitled to a presumption of truth. *Id.; see also Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009).

The sufficiency of complaint allegations is not a one-size-fits-all inquiry. "Determining whether a plausible claim has been pled is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

6

*Lundy v. Catholic Health Sys., Inc.*, 711 F.3d 106, 114 (2d Cir. 2013) (internal quotation omitted) (citing *Iqbal*).

## IV. ARGUMENT

This Court has previously recognized that where, as here, plaintiffs assert claims regarding each week of their employment, they may plead a plausible tip-credit claim by alleging that: (1) they performed work ineligible for tip-credit compensation; (2) they were paid a sub-minimum, tip-credit hourly wage for all hours worked; and (3) they performed non-tipped work each shift. *Hart v. Crab Addison, Inc.*, 2014 WL 5465480, at *1 (W.D.N.Y. Oct. 28, 2014) (hereafter "*Hart II*"). Plaintiffs here have not satisfied the second or third requirements.

### A. Plaintiffs Fail to Plead a Plausible Minimum Wage Claim

"Under what has become known as the *Klinghoffer* rule," it is well-settled that under the FLSA "no minimum wage violation occurs so long as the total wage paid to an employee in any given workweek divided by the total hours worked in the workweek equals or exceeds the applicable minimum wage." *Hart v. Crab Addison, Inc.*, 2014 WL 2865899, at *11 (W.D.N.Y. June 24, 2014) (hereafter "*Hart I*") (quoting *Pruell v. Caritas Christi*, 2010 WL 3789318, at *2 (D. Mass. Sept. 27, 2010)). The *Klinghoffer* rule requires plaintiffs asserting minimum wage claims to allege that "during any particular workweek, the average of the Plaintiffs' hourly wages was less than the . . . minimum wage." *Hart I*, 2014 WL 2865899, at *11; *Zhong v. August August Corp.*, 498 F. Supp. 2d 625, 629 (S.D.N.Y. 2007) ("A claim under the FLSA to recover unpaid minimum . . . wages should indicate the applicable rate of pay and the amount of unpaid minimum . . .

wages due . . . ."). This standard also applies to claims under the NYLL. *Cruz v. AAA Carting & Rubbish Removal, Inc.*, 2015 WL 4393204, at *8, n.4 (S.D.N.Y. July 16, 2015).

Even so, this Court has recognized that, in some circumstances, when an employer satisfies its minimum wage obligations through a tip-credit[2], it may not be necessary to plead certain details showing that wages in a workweek fell below the minimum wage. More specifically, "where a pleading plausibly alleges that an employee in a tipped occupation also worked at an untipped dual job, or performed related untipped duties more than 20% of a workweek, *and the employer claimed the tip credit for all hours worked*, the pleading states a minimum wage tip-credit claim without more." *Hart II*, 2014 WL 5465480, at *5 (emphasis added). The reason for this is that in that scenario, there is necessarily a minimum wage violation because "the employer cannot take the tip credit *at all* for hours spent performing a dual job or spent performing related untipped work that comprised more than 20% of a workweek." *Id.* (emphasis in original).

However, this analysis does not apply here because Plaintiffs do not allege that BWW claimed a tip-credit for all of their work hours. To the contrary, they expressly plead and concede that it did not. Indeed, they plead that Plaintiff Robbins was paid "at least the full applicable minimum wage" to perform work as a hostess and cook, which are job duties that she purportedly performed throughout her employment. They also

---

[2] BWW understands that the Court is familiar with the applicable law on tip-credits, and, in the interest of brevity, will not repeat it here. BWW refers the Court to its decisions in *Hart. See Hart I*, 2014 WL 2865899 (W.D.N.Y. June 24, 2014); *Hart II*, 2014 WL 5465480 (W.D.N.Y. Oct. 28, 2014).

acknowledge that they were not paid at a tipped credit rate for "training" periods.  (Am. Compl.¶¶ 36-37, 50.)   And as noted above, Plaintiffs do not provide any factual details regarding this work, such as its frequency, the number of work hours it involved, applicable rates of pay, or what Plaintiffs' overall compensation (even excluding tips) was in weeks they performed this work.

Thus, unlike in *Hart II*, there is not "necessarily" a minimum wage violation in each workweek Plaintiffs worked for BWW—as the Amended Complaint appears to allege—because Plaintiffs were not paid exclusively at a tipped credit rate. *See Hart II*, 2014 WL 5465480, at *1, 5-6.  Rather, in failing to plead any allegations regarding their overall work hours, the rates of pay for work they concede was not paid at a sub-minimum wage tip-credit rate, or their compensation during any workweek, Plaintiffs' Amended Complaint fails to plead plausible facts showing that their overall compensation  fell below the minimum wage in each workweek.  This is not sufficient to state a claim under either New York or federal law.  *See Lundy*, 711 F.3d at 115 ("invited speculation does not amount to a plausible claim under the FLSA"). And in no event is it sufficient to sustain nation-wide class and collective action claims.  *Sacay v. Research Found. of City Univ. of N.Y.*, 44 F. Supp. 2d 496, 499 (E.D.N.Y. 1999) (noting "'the more substantively complex the cause of action, the greater the mandate for detail under [Rule 8(a)(2)].'") (citation omitted; alterations in original).

As this Court, quoting the Second Circuit, has previously noted: while plaintiffs are

9

>not required . . . to keep careful records and plead their hours with mathematical precision, . . . it is employees' memory and experience that lead them to claim in federal court that they have been denied [the minimum wage] in violation of the FLSA in the first place.  Our standard requires that plaintiffs draw on those resources in providing complaints with sufficiently developed factual allegations.

*Hart I*, 2014 WL 2865899, at *12 (quoting *DeJesus*, *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013)).  Accordingly, to plead a plausible minimum wage claim, Plaintiffs must "provide some specific information to support those claims, regarding weeks in which they were supposedly paid less than the minimum wage." *Id.*  Plaintiffs have not done that, and have instead alleged across-the-board claims relating to each workweek they worked at BWW even though their Complaint establishes they were paid for work at more than the tip-credit rate for an unknown number of hours in certain unidentified workweeks.  For that reason alone, the Court should dismiss their claims under the FLSA and NYLL.

> B. **Plaintiffs Cannot Cure This Deficiency By Focusing Solely On Time Worked At Tipped Rates**

As noted above, BWW made arguments concerning the *Klinghoffer* rule and Plaintiffs' failure to allege that they were paid exclusively at a tip-credit rate in moving to dismiss the first Complaint.  (Dkt. 16, p. 12-14.)  Presented with this argument, Plaintiffs added allegations to their Amended Complaint that appear to disregard the time in which they *were* paid at least the minimum wage, by simply asserting that their claims relate only to work Defendant required "[w]hile paying [them] at the sub-minimum, tip-credit wage" and do not "apply" to work they performed at non-tipped rates.  (Am. Compl. ¶¶ 37, 38, 51.)  To the extent that Plaintiffs rely on these allegations to excuse their failure to

10

account for the wages and time they worked at non-tipped rates in pleading a claim for minimum wages, that reliance fails as a matter of law for multiple reasons.

 First, compliance with wage and hour statutes is determined on workweek basis. *See, e.g.*, *Hart I*, 2014 WL 2865899 at *11.  And the Second Circuit has rejected the notion that a party may avoid the holistic analysis of all hours worked in the workweek the *Klinghoffer* rule demands by limiting claims to particular hours.  For example, in *Lundy v. Catholic Health Sys. of Long Island*, plaintiffs sought overtime for "unpaid hours" related to time spent working through breaks or before and after scheduled shifts. 711 F.3d 106, 111, 116 (2d Cir. 2013).  But the court rejected this "gap time" claim, explaining "[s]o long as an employee is being paid the minimum wage or more, the FLSA does not provide recourse of unpaid hours below the 40-hour threshold." *Id.* at 116.  Just as an employee cannot escape the *Klinghoffer* rule by asserting a claim related to "unpaid time," Plaintiffs here cannot do so by urging the Court to consider only time they worked "[w]hile" being paid at tipped-credit rate.  *See Cruz*, 2015 WL 4393204, at *8  (discussing *Lundy* and holding "employees are not entitled to recovery for unpaid hours worked up to 40 hours a week, so long as the average hourly rate still exceeds the minimum wage").

 Second, nothing in the law suggests that  where—as here—an employer paid an employee at both a tipped and a higher non-tipped wage rate, the employer cannot credit the higher rate toward its obligations if the employee claims she was not paid the proper minimum wage while working at the tipped rate.  Indeed, even Plaintiffs' Amended Complaint appears to acknowledge that the FLSA's tip-credit provisions may be violated

only when the employer takes a "tip credit against its minimum wage violations." (Am. Compl. ¶ 5.) And to the extent Courts have recognized a minimum wage cause of action under the FLSA's tip-credit provisions, they have done so only when the employer relies on tips, not other payments paid at or above the full minimum wage, to satisfy its minimum wage obligations. *See, e.g.*, *Trejo v. Ryman Hospitality Properties, Inc.*, 2015 WL 4548259, at *3 (4th Cir. July 29, 2015) ("it is clear that this language—whatever its import—could give rise to a cause of action *only* if the employer is using *tips* to satisfy its minimum wage requirements." (emphasis added)). Thus, the law surrounding tip credits undercuts any suggestion that income from non-tipped sources (i.e., wages separate and apart from the actual tips the employee receives) is somehow irrelevant to the minimum wage analysis.

      Third, consistent with the above, this Court has already implicitly rejected the notion that a plaintiff's compensation for other work performed at or above the minimum wage is irrelevant in tip-credit cases. If it had not done so, it would have been unnecessary for the Court to structure its analysis in *Hart II* based on the allegation that "the employer claimed the tip credit for *all* hours worked." 2014 WL 5465480 at *5 (emphasis added). Indeed, one concern that animated the Court's analysis in *Hart II* was the notion that an employer could "get away with paying a tipped employee less than the proper wage for work that was not covered by the tip credit exception" by using tip receipts "to offset the underpayment." *Id.* That concern is not implicated when an employer relies on non-tipped *wages* that were paid at or above the full minimum wage to offset underpayment Plaintiffs claim for work not covered by the tip-credit exception.

Because Plaintiffs concede that they were not paid exclusively at a tipped credit rate, their Amended Complaint fails because it does not contain facts alleging that their overall compensation fell below the minimum wage for each week of their employment in accordance with the *Klinghoffer* rule.  In the absence of such facts, and in the face of Plaintiffs' allegations that they were not paid exclusively at a tip-credit rate, it is not reasonable to presume that Plaintiffs' wages fell below the minimum wage during each workweek, as they claim in their Amended Complaint.  *See generally DeJesus*, 726 F.3d at 89-90 (finding the plaintiff must provide sufficient detail and "factual context" to raise more than "the possibility" of an FLSA violation (citation omitted)).  And for all of the reasons set forth above, Plaintiffs cannot excuse their failure to make such allegations by asserting their claims relate only to the time they worked "[w]hile" being paid at a tip-credit rate.

## V. CONCLUSION

For these reasons, BWW respectfully requests that the Court dismiss Plaintiffs' Amended Complaint.

Dated: August 24, 2015

**HODGSON RUSS LLP**

  S/Paul I. Perlman
Paul I. Perlman
 *pperlman@hodgsonruss.com*
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 848–1479
Facsimile: (716) 819–4616

**FAEGRE BAKER DANIELS LLP**

Andrew B. Murphy
*Andrew.Murphy@FaegreBD.com*
(*pro hac vice* pending)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, Minnesota 55402
Telephone: (612) 766–8897
Facsimile: (612) 766–1600

Gregory P. Abrams
*Gregory.Abrams@FaegreBD.com*
(*pro hac vice* pending)
311 South Wacker Drive, Suite 4300
Chicago, Illinois 60606
Telephone: (312) 212-6500
Facsimile: (312) 212-6501

**ATTORNEYS FOR DEFENDANT BLAZIN WINGS, INC. d/b/a BUFFALO WILD WINGS**