**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| ALISHA ROBBINS and AMBER GRANDSTAFF, on behalf of themselves and all others similarly situated, known and unknown, | ) ) ) ) | Civil Action No. 15-06340 Hon. Charles J. Siragusa/ Hon. Magistrate Judge Marian W. Payson |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS** |
| BLAZIN WINGS, INC. d/b/a BUFFALO WILD WINGS, | ) ) ) | |
| Defendant. | ) ) | |

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. BACKGROUND.............................................................................................. 2

  A.  Plaintiffs' minimum wage claims .....................................................................2

  B.  FLSA minimum wage requirements, the "dual jobs" regulation, and DOL
      guidance .............................................................................................................3

      a.  Congress enacts scheme of tip-credit wages and supplements to extend the
          FLSA to hospitality workers .......................................................................3

      b.  The DOL promulgates regulations allowing broad use of tip-credit wages ...................4

      c.  DOL opinion letters require a clear dividing line between the kind of duties
          performed in dual jobs...................................................................................5

      d.  Non-interpretative guidance introduces a new test for "tipped employees"...................6

      e.  The DOL rejects the 20% Rule, retracts its rejection, then does nothing until
          describing the rule as official guidance in a 2011 amicus brief ......................................6

III. ARGUMENT ................................................................................................. 7

  A.  Allegations that BWW violated the DOL's "20% Rule" state no claim for relief .............7

      1.  The 20% Rule conflicts with the FLSA's text, purpose, and structure.........................10

      2.  The 20% Rule conflicts with the plain meaning of the "dual jobs" regulation ............16

      3.  Even if otherwise permitted by section 203(t) and the dual jobs regulation, the
          20% Rule warrants no deference under Auer..............................................................19

  B.  Plaintiffs' "unrelated duties" claims fail as a matter of law .............................................23

IV. CONCLUSION............................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Adair v. ConAgra Foods, Inc.*,
   728 F.3d 849 (8th Cir. 2013) ............................................................................22

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................2, 25

*Auer v. Robbins*,
   519 U.S. 452 (1997)...................................................................................... passim

*Ayers v. SGS Control Servs., Inc.*,
   No. 03-cv-9078 (RMB), 2007 WL 3171342 (S.D.N.Y. Oct. 9, 2007) ....................................13

*Bible v. United Student Aid Funds, Inc.*,
   799 F.3d 633 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1607 (2016)................................12, 15

*Chavez v. T&B Mgmt.*,
   No. 1:16cv1019, 2017 WL 2275013 (M.D.N.C. May 24, 2017) ....................................15, 22

*Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*,
   467 U.S. 837 (1984)........................................................................................8, 15

*Christensen v. Harris Cnty.*,
   529 U.S. 576 (2000)........................................................................................17, 20

*Christopher v. SmithKline Beecham Corp.*,
   567 U.S. 142 (2012)...................................................................................... passim

*Coeur Alaska, Inc. v. Se. Alaska Conservation Council*,
   557 U.S. 261 (2009)........................................................................................16

*Comm'r of Internal Revenue v. Clark*,
   489 U.S. 726 (1989)........................................................................................12

*Crate v. Q's Rest. Grp. LLC*,
   No. 813CV2549T24EAJ, 2014 WL 10556347 (M.D. Fla. May 2, 2014) ................................15

*Driver v. AppleIllinois*,
   LLC, 739 F.3d 1073 (7th Cir. 2014)........................................................................9

*Duckworth v. Pratt & Whitney, Inc.*,
   152 F.3d 1 (1st Cir. 1998)........................................................................................15

*Emergency Servs. Billing Corp. v. Allstate Ins. Co.*,
   668 F.3d 459 (7th Cir. 2012) ...........................................................10

*Encarnacion ex rel. George v. Barnhart*,
   331 F.3d 78 (2d Cir. 2003)............................................................9, 15

*Encino Motorcars, LLC v. Navarro*,
   136 S. Ct. 2117 (2016)...................................................................22

*Fast v. Applebee's Int'l, Inc.*,
   638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725/26), 2010 WL 3761133........................... passim

*Fed. Express Corp. v. Holowecki*,
   552 U.S. 389 (2008)......................................................................19

*First Am. Bank v. Resolution Tr. Corp.*,
   30 F.3d 644 (5th Cir. 1994) .............................................................15

*Flood v. Carlson Rests. Inc.*,
   94 F. Supp. 3d 572 (S.D.N.Y. 2015)...............................................9, 10

*Garcia v. United States*,
   469 U.S. 70 (1984)........................................................................12

*Gonzales v. Oregon*,
   546 U.S. 243 (2006)......................................................................19

*Hart v. Crab Addison, Inc.*,
   No. 13-cv-6458 CJS, 2014 WL 5465480 (W.D.N.Y. Oct. 28, 2014)....................................25

*Hayden v. Paterson*,
   594 F.3d 150 (2d Cir. 2010)..............................................................2

*IBP, Inc. v. Alvarez*,
   546 U.S. 21 (2005).......................................................................11

*In Re Kaiser Aluminum Corp.*,
   456 F.3d 328 (3d Cir. 2006)..............................................................19

*Keys v. Barnhart*,
   347 F.3d 990 (7th Cir. 2003) .............................................................19

*Kilgore v. Outback Steakhouse of Fla., Inc.*,
   160 F.3d 294 (6th Cir. 1998) .............................................................18

*Marsh v. J. Alexander's LLC*,
   869 F.3d 1108 (9th Cir. 2017) ....................................................... passim

*Miller v. AT & T Corp.*,
  250 F.3d 820 (4th Cir. 2001) ...............................................................................22

*Montano v. Montrose Rest. Assoc., Inc.*,
  800 F.3d 186 (5th Cir. 2015) ...............................................................................18

*Montijo v. Romulus Inc.*,
  Nos. CV-14-264-PHX-SMM, CV-14-265-PHX-SMM, CV-14-464-PHX-
  SMM, 2015 WL 1442828 (D. Ariz. Mar. 30, 2015), *vacated in part sub nom.*
  *Marsh*, 869 F.3d 1108...........................................................................................13

*Myers v. Copper Cellar Corp.*,
  192 F.3d 546 (6th Cir. 1999) ...............................................................................17

*O'Melveny & Myers v. F.D.I.C.*,
  512 U.S. 79 (1994)..................................................................................................9

*Or. Rest. & Lodging Ass'n v. Perez*,
  816 F.3d 1080 (9th Cir. 2016) ...............................................................................4

*Pellon v. Bus. Representation Int'l, Inc.*,
  528 F. Supp. 2d 1306 (S.D. Fla. 2007), *aff'd*, 291 Fed. App'x 310 (11th Cir.
  2008) ............................................................................................................. passim

*Perrin v. United States*,
  444 U.S. 37 (1979)................................................................................................10

*Probert v. Family Centered Servs. of Alaska, Inc.*,
  651 F.3d 1007 (9th Cir. 2011) .............................................................................21

*Romero v. Top-Tier Colo. LLC*,
  849 F.3d 1281 (10th Cir. 2017) .............................................................................9

*Roussell v. Brinker Int'l, Inc.*,
  441 Fed. App'x 222 (5th Cir. 2011) .......................................................................9

*Roussell v. Brinker Int'l, Inc.*,
  No. 05–3733, 2008 WL 2714079 (S.D. Tex. 2008) .............................................17

*Sandifer v. U.S. Steel Corp.*,
  134 S. Ct. 870 (2014)............................................................................................15

*Schaefer v. Walker Bros. Enters., Inc.*,
  829 F.3d 551 (7th Cir. 2016) ..........................................................................9, 25

*Skidmore v. Swift & Co.*,
  323 U.S. 134 (1944)..............................................................................................20

*Sullivan v. Stroop*,
496 U.S. 478 (1990)..................................................................................11

*U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*,
508 U.S. 439 (1993)..................................................................................17

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*,
484 U.S. 365 (1988)..................................................................................19

*United States v. Larionoff*,
431 U.S. 864 (1977)..................................................................................15

*Util. Air Regulatory Grp. v. E.P.A.*,
134 S. Ct. 2427 (2014)..............................................................................12

FEDERAL STATUTES

29 U.S.C. § 203.................................................................................. passim

Pub. L. No. 89-601, 80 Stat. 830 (1966)..........................................................4, 8

RULES

Federal Rule of Civil Procedure 12 ....................................................2, 10, 26

REGULATIONS

29 C.F.R. § 206.......................................................................................13

29 C.F.R. § 531.................................................................................. passim

32 Fed. Reg. 13,575, 13,581 (Sept. 28, 1967) ............................................4

76 Fed. Reg. 18,832, 18,838, 18,855 (Apr. 5, 2011) ...................................4, 5

OTHER AUTHORITIES

DOL Fact Sheet #15, *available at*
https://www.dol.gov/whd/regs/compliance/whdfs15.pdf ........................................7

DOL Wage & Hour Div., Field Operations Handbook ...................................... passim

DOL Wage & Hour Div., Opinion Letter FLSA-854 (Dec. 20, 1985)............................5

DOL Wage & Hour Div., Opinion Letter FLSA-895 (Aug. 8, 1979) ................5, 17, 24

DOL Wage & Hour Div., Opinion Letter FLSA2009-12 (Jan. 15, 2009)....................18

DOL Wage & Hour Div., Opinion Letter FLSA2009-23 (Jan. 16, 2009), *available at* https://www.dol.gov/whd/opinion/FLSA/2009/2009_01_16_23_FLSA.pdf ......................7

DOL Wage & Hour Div., Opinion Letter WH-502 (Mar. 28, 1980)................................................5

O-Net Resource Center, *available at* https://www.onetcenter.org/overview.html .......................24

S. Rep. No. 89-1487 (1966), *reprinted in* 1966 U.S.C.C.A.N. 3002.............................................12

## I. INTRODUCTION

Plaintiffs' Fair Labor Standards Act ("FLSA") claims fail as a matter of law.  As their primary theory of liability, Plaintiffs allege that they spent more than 20% of their time on tasks not directed to producing tips while receiving a "tip-credit" hourly wage as servers and bartenders in Buffalo Wild Wings restaurants.  But this theory does not rest on any language in any statute or regulation.  Instead, Plaintiffs rely on Department of Labor ("DOL") guidance[1] that purports to interpret a 1967 regulation governing when tipped employees work in non-tipped occupations—*i.e.*,  "dual jobs."  (29 C.F.R. § 531.56(e)).  Unpersuasive on its face, this "20 percent interpretation" has led the Court to question whether it "is just that": an interpretation that is "not law," "not binding," and that "doesn't mean anything." [2]  Indeed, the Court has specifically anticipated that the Ninth Circuit would provide "guidance" in a pending case.  *Id.*

The Ninth Circuit has done so now.  In *Marsh v. J. Alexander's LLC*, 869 F.3d 1108 (9th Cir. 2017), the court found that "[n]othing in the FLSA's context, structure, history, [or] purpose suggests Congress intended" to limit the time tipped employees spend on interspersed "untipped" duties.  *Id*. at 1121 (quotations omitted).  *Marsh* confirms, in fact, that the so-called "20% Rule" does not begin to satisfy the conditions for deferring to an agency's interpretation of a regulation.  Not only does the rule effectively re-write the statute, but also it imposes an infeasible scheme of minute-by-minute tracking of tipped and untipped duties.  It discards the unambiguous meaning of the regulation it purports to interpret.  And while *Marsh* did not reach the issue, it creates massive, industry-wide liability despite Congress's specific intent to preserve

---

[1] DOL Wage and Hour Division, Field Operations Handbook § 30d00(f) (2016), *available at* http://www.dol.gov/whd/FOH ("FOH § 30d00(f) (2016)").

[2] Feb. 4, 2016, Tr. of Proceedings, *Hart et al. v. Crab Addison, Inc.*, Case No. 13-cv-6458 (W.D.N.Y. 2016), 10:4–20, attached as **Exhibit A** to the Affidavit of Andrew Murphy in Support of Defendant's Motion for Judgment on the Pleadings, dated October 20, 2017 ("Murphy Aff.").

tipping practices, five decades without enforcement actions, and conflicting opinion letters that defy any attempt to describe the 20% Rule as the "fair and considered judgment" of the DOL.

Each of these problems—let alone all of them—defeats this putative collective action. Claims that Buffalo Wild Wings should have paid the full minimum wage whenever Plaintiffs spent more than 20% of their time on purportedly untipped tasks fail because the FLSA enacts no such requirement.  Nor, as the Seventh Circuit has now held, does the FLSA or dual jobs regulation support Plaintiffs' alternate theory: that duties like cleaning glasses, rolling silverware, and "opening" restaurants—*i.e.*, tasks often assigned to servers and bartenders across the industry—are so "unrelated" to their tipped occupations as to require compensation at the full minimum wage.  And not just insufficient to state a claim for relief, both theories would transform the FLSA into something it is not: a super-minimum wage statute that creates a special category of tipped workers entitled to compensation well above the minimum wage.

Under the Federal Rules of Civil Procedure, allegations must state a plausible claim for relief to survive a motion for judgment on the pleadings.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal citations, quotations omitted)); *Hayden v. Paterson*, 594 F.3d 150, 157 n.4 (2d Cir. 2010) ("In deciding a Rule 12(c) motion, we apply the same standard as that applicable to a motion under Rule 12(b)(6) . . . ." (internal citations, quotations omitted)).  Here, in contrast, Plaintiffs' federal claims remain a protest in search of a prohibition.  They fail as a matter of law.

## II. BACKGROUND

**A.      Plaintiffs' minimum wage claims.**

Plaintiffs filed this collective action[3] on behalf of "similarly situated" servers and bartenders against Defendant Blazin Wings, Inc. d/b/a Buffalo Wild Wings ("BWW") seeking damages for alleged unpaid minimum wages under the FLSA, 29 U.S.C. § 201, *et seq.* and various state laws.  Plaintiffs' Third Amended Class and Collective Action Complaint ("TAC") ¶¶ 1–9 (Dckt. # 155).  They allege that BWW violated FLSA minimum wage requirements under two theories: (1) that BWW "has a policy and practice of requiring its Tip-Credit Employees to perform . . . non-tipped work [that is "related to the employees' tipped occupation"] for more than 20 percent of their time worked each shift"; and (2) that BWW has "a policy and practice of paying its Tip-Credit Employees sub-minimum, tip-credit wages even when it requires those employees to perform non-tipped work that is unrelated to their tipped occupation, such as sweeping, mopping, and vacuuming restaurant floors, preparing food, including slicing fruit, rolling silverware, and washing the restaurant's dishes."  *Id.* ¶¶ 13–14.[4]

**B.      FLSA minimum wage requirements, the "dual jobs" regulation, and DOL guidance.**

Because Plaintiffs' allegations implicate the FLSA's text, history, and purpose as well as the DOL's regulations and guidance, BWW summarizes relevant provisions below.

>   *a.      Congress enacts scheme of tip-credit wages and supplements to extend the FLSA to hospitality workers*

Congress enacted the FLSA in 1938 to protect covered workers from substandard wages and oppressive hours.  *Christopher v. SmithKline Beecham Corp.*, 567 U.S. 142, 147 (2012).  In 1966, Congress amended the FLSA to extend coverage to tipped workers in the hospitality

---

[3] On March 18, 2016, this Court granted Plaintiffs' motion for conditional certification.  *See* Decision and Order (Dckt. # 097).

[4] The TAC's allegations on behalf of individual plaintiffs list additional tasks that were allegedly performed at tip-credit wages, estimates that "untipped tasks" collectively accounted for various percentages of an individual plaintiff's average shift, and estimates the average time spent on opening or closing duties.  *See generally* TAC.

industry.  *Marsh*, 869 F.3d at 1117 (citing Fair Labor Standards Amendments of 1966, Pub. L.

No. 89-601, § 101, 80 Stat. 830, 830 (1966)).  To preserve existing industry practices, the 1966

amendments: (1) defined tipped employees to include "any employee engaged in an occupation

in which he customarily and regularly receives more than $20 a month in tips" (PL 89-601, §

101, 80 Stat. 830, 830 (1966)); and (2) "provided for the first time, within section [20]3(m)'s

definition of a 'wage,' that an employer could [use] a limited amount of its employees' tips as a

credit against its minimum wage obligations . . . through a so-called 'tip credit.'"  *Or. Rest. &

Lodging Ass'n v. Perez*, 816 F.3d 1080, 1083 (9th Cir. 2016) (quoting 76 Fed. Reg. 18,832,

18,838 (Apr. 5, 2011)).  The tip credit's initial amount was set at a maximum of 50% of the

minimum wage (PL 89-601), but Congress revised § 203(m) in 1996 to require employers to pay

at least a cash wage of $2.13, and to "increase the cash wage to meet the minimum wage

requirement" when tips actually received are insufficient to do so.  *Marsh*, 869 F.3d at 1113.

   *b.*  *The DOL promulgates regulations allowing broad use of tip-credit wages*

  The DOL exercised its authority "to promulgate necessary rules, regulations, or orders

with regard to the amendments" to address the meaning of "tipped employee" under § 203(t) in

1967.  Fair Labor Standards Amendments of 1966, Pub. L. No. 89-601, § 602, 80 Stat. 830, 844

(1966); 32 Fed. Reg. 13,575, 13,581 (Sept. 28, 1967).  In a regulation titled "[m]ore than $30 a

month in tips," the DOL first parroted the statutory definition of "tipped employee."  29 C.F.R. §

531.56(a).  Its subsection (e) then clarified that employees who perform duties *unrelated* to their

tipped occupations are employed in a second job for which no tip credit can be taken:

    Dual jobs.  In some situations <u>an employee is employed in a dual
    job</u>, as for example, <u>where a maintenance man in a hotel also serves
    as a waiter</u>. In such a situation the employee, if he customarily and

regularly receives at least $30[5] a month in tips for his work as a
waiter, is a tipped employee only with respect to his employment as
a waiter. He is employed in two occupations, and no tip credit can be
taken for his hours of employment in his occupation of maintenance
man. <u>Such a situation is distinguishable from that of a waitress who
spends part of her time cleaning and setting tables</u>, toasting bread,
making coffee and occasionally washing dishes or glasses. It is
likewise distinguishable from the counterman who also prepares his
own short orders or who, as part of a group of countermen, takes a
turn as a short order cook for the group. Such related duties in an
occupation that is a tipped occupation need not by themselves be
directed toward producing tips.

29 C.F.R. § 531.56(e) (emphases added).

      *c.*      *DOL opinion letters require a clear dividing line between the kind of duties
performed in dual jobs*

Over the next two decades, the DOL issued three opinion letters[6] addressing dual jobs: 1)

a "1979 Letter" opining that waitresses required to perform two hours of "salad preparation

activities [that] are essentially the activities performed by chefs" were effectively employed  in

two occupations; 2) a "1980 Letter" opining that waiters required to "clean the salad bar, place

the condiment crocks in the cooler, clean and stock the waitress station, clean and reset the tables

. . . and vacuum the dining room carpet, after the restaurant is closed," did not work in dual jobs

because there was no "clear dividing line between the types of duties performed by a tipped

employee, such as between maintenance duties and waitress duties;" and 3) a "1985 Letter"

concluding that where "only one waiter or waitress is assigned to perform all preparatory

activities" for the entire restaurant and must arrive two hours before opening to perform those

---

[5] The DOL replaced "$20" with "$30" in 2011.  *See* 76 Fed. Reg. 18,832, 18,855 (Apr. 5, 2011).
[6] DOL Wage & Hour Div., Opinion Letter FLSA-895 (Aug. 8, 1979) ("1979 Letter"), Murphy
Aff. at **Exhibit B**; DOL Wage & Hour Div., Opinion Letter WH-502 (Mar. 28, 1980), *available
at* 1980 WL 141336 ("1980 Letter") (emphasis added); DOL Wage & Hour Div., Opinion Letter
FLSA-854 (Dec. 20, 1985), *available at* 1985 WL 1259240 ("1985 Letter").

duties, she is employed in two different occupations.  In each of these cases, a clear line divides the kind of duties performed in the dual job (if one existed) from duties performed by the employer's other tipped employees.

       *d.*     *Non-interpretative guidance introduces a new test for "tipped employees"*

     In 1988, the DOL provided its field agents with a new test for tipped employment.  Its 1988 Handbook acknowledged that 29 C.F.R. § 531.56(e) generally "permits the taking of the tip credit for time spent in duties related to the tipped occupation of an employee, even though such duties are not by themselves directed toward producing tips . . . provided such related duties are incidental to the regular duties of the [tipped employee] and are generally assigned to the [tipped employee]."[7] But the Handbook also advised field agents:

> [W]here the facts indicate that . . . tipped employees spend a substantial amount of time (in excess of 20 percent) performing general preparation work or maintenance, no tip credit may be taken for the time spent in those duties.[8]

The Handbook was later modified to advise that where "tipped employees spend a substantial amount of time (*i.e.*, in excess of 20 percent of the hours worked in the tipped occupation workweek) performing such related duties, no tip credit may be taken for time spent on those duties."  FOH § 30d00(f) (2016).  Though the Handbook is provided to field agents, the DOL has expressly disclaimed any intent to "use [it] as a device for establishing interpretative policy."  *Id.*

       *e.*     *The DOL rejects the 20% Rule, retracts its rejection, then does nothing until describing the rule as official guidance in a 2011 amicus brief*

     Consistent with other opinion letters, the DOL executed a January 16, 2009 letter, stating: (1) FOH § 30d00(e) should not be construed to "limit[ ] . . . the amount of duties related to a tip-

---

[7] DOL Wage and Hour Division, Field Operations Handbook, FOH § 30d00(e) (1988), Murphy Aff. at **Exhibit C**.

[8] *Id.* at § 30d00(f).

producing occupation that may be performed, so long as they are performed contemporaneously with direct customer-service duties;" (2) "[t]hese principles supersede our statements in FOH § 30d00(e);" and (3) that "[a] revised FOH statement will be forthcoming."[9]  Under the direction of a new presidential administration, the DOL withdrew this guidance on March 2, 2009.  *Id.*

Two years later, but more than four decades after promulgating the dual jobs regulation, the DOL described the 20% Rule (FOH § 30d00(e)) as an official agency interpretation of the dual jobs regulation in an Eighth Circuit amicus brief.[10]  There, and in a 2017 amicus brief to the Ninth Circuit, the DOL argued that the 20% Rule resolved ambiguity in the regulation's reference to "part of her time" and "occasionally"—words used to describe the activities of a tipped waitress—by "affix[ing] a specific limit to the regulation's tolerance for the 'occasional' performance of such related duties, capping it at 20 percent of the . . . employee's time."  *See id.* at 9.  Nonetheless, BWW is unaware of any DOL enforcement action under this guidance.

### III. ARGUMENT

**A.    Allegations that BWW violated the DOL's "20% Rule" state no claim for relief.**

Plaintiffs' federal claims against BWW depend on deference to DOL guidance for which no deference is warranted.  Plaintiffs do not contend that BWW failed to pay the FLSA's tip-credit wage or any supplement required to raise their hourly compensation to the $7.25 hourly minimum; rather, they claim BWW violated DOL guidance—originating in a field agent

---

[9] DOL Wage & Hour Div., Opinion Letter FLSA2009-23 (Jan. 16, 2009), *available at* https://www.dol.gov/whd/opinion/FLSA/2009/2009_01_16_23_FLSA.pdf.

[10] *See* Br. for the Sec. of Labor as Amicus Curiae in Support of Plaintiffs–Appellees, 12–13, *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872 (8th Cir. 2011) (Nos. 10-1725/26), 2010 WL 3761133. The DOL also restated the 20% Rule in Fact Sheet # 15: Tipped Employees Under the Fair Labor Standards Act (FLSA) (rev. Mar. 2011) ("DOL Fact Sheet # 15"), *available at* https://www.dol.gov/whd/regs/compliance/whdfs15.pdf

handbook—that tipped employees who spend more than 20% of their weekly time on incidental duties "*not by themselves directed toward producing tips*" must be paid the full minimum wage. *See* 29 C.F.R. § 531.56(e); *see also* TAC ¶¶ 14–15 (alleging BWW violated the FLSA by requiring tipped employees to spend more than 20 percent of their time on non-tipped activities, even if those tasks "were related to the employees' tipped occupations."). Through this 20% Rule the DOL purports to interpret a "dual jobs" regulation (29 C.F.R. § 531.56(e)) which, in turn, interprets the FLSA's definition of "tipped employee" (29 U.S.C. § 203(t)). Plaintiffs' theory of liability thus rests on the principle that courts generally defer to an agency's interpretation of an ambiguous regulation.

What this entire theory forgets, however, is that here there is no ambiguity because Congress has spoken directly to the determinative issue: whether servers and bartenders who perform duties related to those occupations are "tipped employees." Unlike instances where Congress delegates authority to define and delimit terms,[11] § 203(t) unambiguously requires a "tipped employee" to meet just *two* criteria: 1) "[that he or she] is engaged in an occupation," and 2) that the occupation is one in which he regularly and customarily receives at least $30 in tips per month. *Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 876 (8th Cir. 2011). Yet the 20% Rule adds a *third* criterion: that "tipped employees" are engaged in performing tasks specifically directed toward producing tips, unless they account for less than 20% of the workweek. The fact that the agency has amended a plainly worded statute alone precludes deference. *Chevron U.S.A. Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842–43 (1984). Under the guise of

---

[11] *Cf. Smithkline Beecham Corp.*, 567 U.S. at 147 ("Congress did not define the term 'outside salesman,' but it delegated authority to the DOL to issue regulations 'from time to time' to 'defin[e] and delimi[t]' the term."). Here, the DOL relies on its general authority under the 1966 amendments "to promulgate necessary rules, regulations, or orders with regard to the amendments made." Pub. L. No. 89-601, § 602, 80 Stat. 830, 844 (1966).

interpreting a regulation, the DOL has exceeded any delegated authority by re-writing the

statutory definition of "tipped employee" to require sufficient time spent on tipped tasks.  *Id.*; *see*

*also Encarnacion ex rel. George v. Barnhart*, 331 F.3d 78, 86 (2d Cir. 2003) ("Because it would

make no sense to presume that Congress had the general intent to delegate to an agency the

power to contradict Congress's clearly expressed specific intent in some other matter, we will

not defer when an [agency's interpretation of its own regulation] is clearly contrary to any

statute.").[12]

    Nor does it matter that the 20% Rule has sometimes been treated as a legitimate exercise

of agency discretion.  Only one federal court of appeals, the Eighth Circuit in *Fast v. Applebee's*

*International, Inc.*, has upheld the rule against a direct challenge to agency discretion.  And only

by paying little attention to the statute itself—and to the plain meaning of the dual jobs

regulation[13]—did *Fast* find this DOL guidance worthy of deference under *Auer v. Robbins*, 519

U.S. 452 (1997).  *See also Flood v. Carlson Rests. Inc.*, 94 F. Supp. 3d 572, 582 (S.D.N.Y. 2015)

(agreeing with *Fast* analysis in the absence of Second Circuit authority on 20% Rule).  More

recently, the extensive statutory and historical analysis conducted by the Ninth Circuit in *Marsh*

---

[12] *See also Smithkline Beecham Corp.*, 567 U.S. at 163 (declining to give *Auer* deference that "would defeat Congress' intent to define 'sale' in a broad manner"); *O'Melveny & Myers v. F.D.I.C.*, 512 U.S. 79, 85 (1994) ("To create additional 'federal common-law' exceptions is not to 'supplement' this scheme, but to alter it.").

[13] The Court merely declared the statutory reference to "engaged in an occupation" ambiguous and proceeded to analyze the dual jobs regulation.  Other courts of appeal have not addressed the 20% Rule validity.  *Schaefer v. Walker Bros. Enters., Inc.*, 829 F.3d 551, 554–55 (7th Cir. 2016) (applying the 20% rule where unchallenged by the defendant); *see also Driver v. AppleIllinois, LLC*, 739 F.3d 1073, 1075 (7th Cir. 2014) (addressing class certification involving 20% Rule claims, not whether the rule warrants deference); *Romero v. Top-Tier Colo. LLC*, 849 F.3d 1281, 1284 (10th Cir. 2017) (not reaching question of whether plaintiff stated claim by alleging she spent more than 20 percent of her workweek performing "related but nontipped work"); *Roussell v. Brinker Int'l, Inc.*, 441 Fed. App'x 222, 232 (5th Cir. 2011) (noting deference given by *Fast*, but applying DOL opinion letter to find "clear dividing line" between tipped servers in restaurant and servers assigned to perform quality assurance duties for the entire shift).

led to an altogether different result: the court rejected the 20% Rule as both inconsistent with the statutory definition of "tipped employee" and amounting to "an alternative regulatory approach with new substantive rules that regulate how employees spend their time." *Marsh*, 869 F.3d at 1124, 1126 n.24 (rejecting *Fast* and *Flood* as unpersuasive). And like *Marsh*, the Eleventh Circuit has found it infeasible to define "tipped employees" by calculating the time spent on tipped and untipped tasks. *See Pellon v. Bus. Representation Int'l, Inc.*, 528 F. Supp. 2d 1306, 1313–14 (S.D. Fla. 2007), *aff'd*, 291 Fed. App'x 310 (11th Cir. 2008).

As these decisions confirm, the 20% Rule can no longer pass for a routine exercise of discretion. Nor does it otherwise warrant deference. As set out below, this agency-made rule: 1) conflicts with the FLSA's text, purpose, and history; 2) disregards the plain meaning of the dual jobs regulation it purports to interpret; and 3) creates a de facto new and infeasible regulation *not* imposed through notice and comment rulemaking, and not even consistently applied by the agency itself. And for each of these reasons, BWW is entitled to judgment as a matter of law.[14]

### 1. The 20% Rule conflicts with the FLSA's text, purpose, and structure.

The 20% Rule is not entitled to deference for the fundamental reason that it conflicts with the text, purpose, and structure of the FLSA. ***First,*** this guidance ignores the plain meaning of the word "occupation" in the statute's text. To conclude that the 20% Rule does *not* re-write the definition of "tipped employee" in § 203(t)—*i.e.*, that it imposes no additional requirement—the Eighth Circuit points to "ambiguity" in the phrase "engaged in an occupation." *Fast*, 638 F.3d at 876, *citing* 29 U.S.C. § 203(t) (defining "tipped employee" to include "any employee *engaged in an occupation* in which he customarily and regularly receives more than $30 a month in tips."

---

[14] *See generally Emergency Servs. Billing Corp. v. Allstate Ins. Co*., 668 F.3d 459, 468-70 (7th Cir. 2012) (affirming Rule 12(c) dismissal after finding the plain text of the statute unambiguous and thus plaintiff's proposed reliance upon the EPA interpretation immaterial).

(emphasis added)).   But unless otherwise defined, statutory words take their "ordinary, contemporary, common meaning."  *See Perrin v. United States*, 444 U.S. 37, 42 (1979).  Thus "engaged in an *occupation*" must mean performing the collection of duties associated with a particular "vocation" or job.  Indeed, that broad reference "to jobs in particular industries, rather than to discrete tasks" (*see Marsh*, 869 F.3d at 1122) is confirmed by other provisions in the FLSA.  *See, e.g.*, 29 U.S.C. § 203(l) (referring to employment in an occupation other than manufacturing and mining); *id.* at § 214(b)(2) (referring to "any occupation in agriculture").[15]

But rather than incorporate this plain meaning, the 20% Rule does the opposite: it slices duties associated with the *same* job (related duties) into *different* occupations (tipped and untipped).  The results are equally confounding: as defined by this agency guidance, a waiter remains a waiter while pouring water into a customer's glass, but becomes a cook when filling cups of ranch dressing; a bartender remains a bartender while shaking a martini tumbler, but is a janitor when rinsing it out; and similar transformations occur throughout each shift.  These minute-by-minute gyrations fit no common understanding of the word "occupation."  *See Marsh*, 869 F.3d at 1122–23.  Nor are occupations with *fixed* duties commonly understood to *fluctuate* weekly.  (Waiters, for example, do not ordinarily become "janitors" when business is slow).  And even while particular occupations may distinguish primary from incidental duties, the 20% Rule does something different: it imposes *one* limit on untipped duties across *all* occupations, irrespective of what those jobs customarily require.

---

[15] *IBP, Inc. v. Alvarez*, 546 U.S. 21, 34 (2005) ("[I]dentical words used in different parts of the same statute are generally presumed to have the same meaning."); *see also Sullivan v. Stroop*, 496 U.S. 478, 484–85 (1990) (reciting statutory canon that the same or similar terms in a statute should be interpreted the same way).  That meaning is also evident in other DOL regulations (*see* 29 C.F.R. § 531.57 (identifying specific "occupations" in which one might be engaged as "waiters, bellhops, taxicab drivers, barbers, or beauty operators")) and in the name given to the regulation at issue: "dual *jobs*."  *Id.* at § 531.56(e) (emphasis added); *see infra*, at § (A)(2).

As just a few examples make clear, the 20% Rule is neither a reasonable nor plausible interpretation of the phrase "engaged in an occupation."  This guidance asks not whether an employee's duties are sufficiently related to comprise an *occupation*, but whether they are sufficiently likely to produce *tips*.  *See Marsh*, 869 F.3d at 1121–22 (20% Rule is inconsistent with statute's text); *Bible v. United Student Aid Funds, Inc.*, 799 F.3d 633, 674 (7th Cir. 2015), *cert. denied*, 136 S. Ct. 1607 (2016) (refusing *Auer* deference to a de facto "rule that determines *when* costs will be charged for rehabilitated [student] loans, not *what* those costs will be," which "was not a gap [Congress] explicitly left for the agency to fill." (emphases in original)).

*Second*, the 20% Rule disregards the FLSA's structure and purpose.  *See Util. Air Regulatory Grp. v. E.P.A.*, 134 S. Ct. 2427, 2441 (2014) (describing the need to read provisions in context as a "fundamental canon of statutory construction").  Consider just that Congress intended Sections 203(m) and 203(t)—1966 amendments that first extended the FLSA to workers in the hotel and restaurant industries—"to permit the continuance of existing practices with respect to tips."  S. Rep. No. 89-1487 (1966), *as reprinted in* 1966 U.S.C.C.A.N. 3002, 3014.[16]  How many restaurants paid waiters full minimum wages whenever opening or closing duties accounted for more than 20% of their week in 1966?  How many tracked time spent on "tipped" versus "untipped" tasks throughout each shift?[17]  The 20% Rule does not "permit the continuance of," but upends the very practices that Congress acted to preserve.  Through an expansive reading of its own regulation, the DOL would "eviscerate [the] legislative judgment" enacted by the statute itself.  *Comm'r of Internal Revenue v. Clark*, 489 U.S. 726, 739 (1989).

---

[16] *See Garcia v. United States*, 469 U.S. 70, 76 (1984) (describing committee reports as authoritative) (citation and internal quotation marks omitted).

[17] Government publications that describe waiter duties at the time of the amendments suggest no such industry practice.  *See infra*, note 35.

Perhaps worse, none of this tracking advances the statute's objective: "protect[ing] all covered workers from substandard wages and oppressive working hours." *SmithKline Beecham Corp.*, 567 U.S. at 147 (citations omitted).  To raise wages for "tipped employees," the FLSA requires employers to supplement a "tip-credit" wage whenever necessary to satisfy the federal minimum.  *See Marsh*, 869 F.3d at 1113.  Consistently, it grants tipped employees a private right of action only to enforce that hourly minimum wage.  29 C.F.R. § 206.  Read together, the tip-credit provisions are thus a *rejection* of—not a request for—alternate ways of preventing substandard compensation.  Nor does this statutory scheme allow what the 20% Rule inadvertently enacts: a special category of tipped workers entitled to a super-minimum wage.[18] As one server explains, she would not want *just* the statutory minimum wage (having netted more than $12 per hour with tips); rather, she seeks the *higher* hourly compensation "commensurate" with the particular duties she performs.[19]

Moreover, the sheer infeasability of the 20% Rule extinguishes any idea that Congress meant to allow it.  Contrary to any such purpose—and unlike the statutory scheme of tip-credit wage supplements—the project of paying different wages for different tasks (*i.e.*, depending on whether they are directed "toward producing tips") *begins* with extreme difficulty:

---

[18] *See, e.g.*, *Montijo v. Romulus Inc.*, Nos. CV-14-264-PHX-SMM, CV-14-265-PHX-SMM, CV-14-464-PHX-SMM, 2015 WL 1442828, at *13 (D. Ariz. Mar. 30, 2015), *vacated in part sub nom. Marsh*, 869 F.3d 1108 (refusing to defer to a rule with "the net effect of allowing a server to do nothing during slow periods at a restaurant or require the restaurant to pay the server additional sums."); *Ayers v. SGS Control Servs., Inc.*, No. 03-cv-9078 (RMB), 2007 WL 3171342, at *3 (S.D.N.Y. Oct. 9, 2007) (noting that Congress intended to provide a wage floor, not a windfall at the employer's expense).

[19] *See* Dep. of H. Machutta, Feb. 16, 2017 ("Machutta Dep.") at 23:15–24:20, Murphy Aff. at **Exhibit D**.

- If a waitress brings silverware after the customer is seated, is the task "tipped"?  What if the customer was distracted and didn't notice, or she sets tables before the restaurant opens?[20]

- If a bartender cleans a spill approaching a customer, is the task tipped?  What if the drink spills toward the bar?[21]

- If bringing out cups of ranch dressing is tipped, is filling those cups also tipped?  What if a customer knows a waiter is filling the cups?[22]

- If cutting fruit is tipped work when that fruit ends up in the drink of a bar customer, is it untipped when destined for the glass of a server's customer's instead?[23]

- If removing a glass because the customer is done using it is untipped, is removing the glass because the customer wants a refill still tipped?[24]

These "threshold" issues alone are "unsolveable"—as the varying opinions of the opt-in Plaintiffs confirm.  *See Pellon*, 528 F. Supp. 2d at 1314 (posing similarly unsolveable questions like how far could a skycap walk from the curb before performing an untipped duty?).

And once classified, tipped and untipped duties would require timing, tracking, and recording to-the-minute under this 20% guidance.  A practical impossibility, this vast undertaking would extend to virtually every tipped employee.  Indeed, "nearly every person employed in a tipped occupation could claim a cause of action against his employer if the employer did not keep the employee under perpetual surveillance."  528 F. Supp. 2d at 1314.

Two circuits have already declared this time-keeping morass incompatible with Congress's explicit effort to preserve the "continuance of existing practices with respect to tips."

---

[20] *See* Machutta Dep. at 113:21–114:11.

[21] *See* Dep. of A. Sloan, January 18, 2017 at 113:11–115:8, Murphy Aff. at **Exhibit E**.

[22] *See* Dep. of D. Knapp, January 12, 2017 at 148:1-5, Murphy Aff. at **Exhibit F.**

[23] *See* D. of K. Roberts, January 13, 2017, 86:15–87:9, Murphy Aff.at **Exhibit G**.

[24] *See* D. of K. Cook, December 15, 2016 at 58:9–59:13, Murphy Aff. at **Exhibit H**; Dep. of M. Devine, December 15, 2016 at 23:5-16, Murphy Aff. at **Exhibit I**.

*Marsh*, 869 F.3d at 1117; *Pellon*, 528 F. Supp. 2d at 1314 (finding rule could create a rule-swallowing exception).[25]   And the Supreme Court categorically rejects its premise—that without saying so Congress could intend "to convert federal judges into time-study professionals." *Sandifer v. U.S. Steel Corp.*, 134 S. Ct. 870, 880 (2014) (addressing § 203(o)).   Addressing another FLSA provision, *Sandifer* reasoned that drawing courts into "a morass of difficult, fact-specific determinations" was an especially improbable goal since avoiding that "intricate exercise" would merely leave the issue to collective bargaining.  *Id.* at 880–81.   And that goal is still less plausible here: Section 203(m) guarantees that tipped employees receive compensation equal to the federal minimum wage, even if the employer must supplement their hourly pay.

In sum, no principle of statutory construction—indeed, nothing in the FLSA's "context, structure, history, [or] purpose"—allows the DOL to re-define "tipped employees" as employees performing "tipped tasks."   On this point, Congress's intent "is the end of the matter."   *Chevron*, 467 U.S. at 842.   Defining *any* "person engaged in a job that generates the requisite amount of tips as a 'tipped employee,'" § 203(t) must be enforced.  *Marsh*, 869 F.3d at 1124; *see also United States v. Larionoff*, 431 U.S. 864, 872–73 (1977) (explaining that deference is not owed to an agency's interpretation of a regulation that is inconsistent with the statute).[26]

---

[25] *See also Chavez v. T&B Mgmt.*, No. 1:16cv1019, 2017 WL 2275013, at *7 n. 9 (M.D.N.C. May 24, 2017) ("Nothing in the DOL's other opinion letters is consistent with imposing such a detailed recording requirement for contemporaneously performed work as a tipped employee."); *Crate v. Q's Rest. Grp. LLC*, No. 813CV2549T24EAJ, 2014 WL 10556347, at *4 (M.D. Fla. May 2, 2014) (finding time keeping requirements of 20% rule "infeasible").

[26] *See also Barnhart*, 331 F.3d at 86 (refusing to defer when an agency's interpretation of its own regulation is "clearly contrary to any statute"); *Duckworth v. Pratt & Whitney, Inc.*, 152 F.3d 1, 6 (1st Cir. 1998) ("No deference is due the administrative agency's interpretation if it conflicts with unambiguous language [of the statute]."); *First Am. Bank v. Resolution Tr. Corp.*, 30 F.3d 644, 647 (5th Cir. 1994) ("[W]here an agency has promulgated a regulation or adopted an interpretation that is in conflict with a statute's plain meaning, the reviewing court is not required *Continued on next page...*

**2.   The 20% Rule conflicts with the plain meaning of the "dual jobs" regulation.**

Not just contrary to the plain meaning of the FLSA, the 20% Rule conflicts with the

regulation it purports to interpret.  Confined by the plain meaning of § 203(t), the "dual jobs"

regulation addresses a narrow question: is a tipped employee performing unrelated duties still

engaged in a tipped occupation?  29 C.F.R. § 531.56(e); *see also Coeur Alaska, Inc. v. Se. Alaska

Conservation Council*, 557 U.S. 261, 277–78 (2009) (noting that an agency may resolve

ambiguity or fill gaps if a statute is silent or ambiguous as to the question at issue).  Answering

*no*, § 531.56(e) classifies the "maintenance man in a hotel [who] also serves as a waiter"—*i.e.*,

an employee who performs duties *unrelated* to his "tipped occupation"—as "an employee . . .

employed in a dual job."  29 C.F.R. § 531.56(e).  It contrasts the maintenance man/waiter with

employees who perform duties "related" to their tipped occupation—*i.e.*, "a waitress who spends

part of her time cleaning and setting tables . . . and occasionally washing dishes or glasses" and

countermen who prepare their customers' food or take turns doing short order cooking for the

group.  *Id.*  And it concludes: "Such related duties in an occupation that is a tipped occupation

need not by themselves be directed toward producing tips."  *Id.*

This final sentence—that related duties need not be directed at producing tips—states the

general rule.  *Id.*  Indeed, it affirms that related duties in a tipped occupation are unaffected by

the regulation.  Nor is § 531.56(e) otherwise ambiguous.  In *Fast*, the Eighth Circuit seized on

the regulation's failure to "address . . . an employee performing related duties more than 'part of

[the] time' or more than 'occasionally.'"  638 F.3d at 877.  But that is precisely the point:

Section 531.56(e) does not compare employees who spend varying amounts of time performing

---

to give deference to the agency's interpretation."); *Bible*, 799 F.3d at 674 (refusing *Auer*
deference for interpretation that "was not a gap [Congress] explicitly left for the agency to fill").

duties *related* to their tipped occupations; it compares employees who do and do not perform

*unrelated* duties.  *Marsh*, 869 F.3d at 1122 (contrasting "maintenance man" duties keeping

buildings or equipment in good repair with distinct waiter duties like serving customers).  Had

the DOL meant to limit untipped time, it would have spoken to that issue—if only by providing a

disqualifying example.[27]   And contradicting any such intention, the regulation's "countermen"

remain tipped employees when they cook by turn or for their own customers, *no matter how*

*much time those duties take*.  *Marsh*, 869 F.3d at 1122; *see also Christensen v. Harris Cnty.*, 529

U.S. 576, 588 (2000) (rejecting *Auer* deference where the regulation being interpreted was not

ambiguous but "plainly permissive").

Opinion letters interpreting § 531.56(e) confirm the distinction.  Most significantly: 1) the

DOL's 1979 letter opined that a waitress who engaged in "salad preparation activities [that were]

*essentially the activities* performed by chefs" performed a dual job;  2) in contrast, its 1980 letter

found only a tipped occupation where *no* "*clear dividing line* [separated] the *types* of duties

performed by a tipped employee," on the one hand, and duties performed while servers "opened"

and "closed" the restaurant, on the other; and 3) its 1985 letter opined that assigning to just one

waiter all preparatory duties for the entire restaurant created a dual occupation.  In each of these

cases, the "clear dividing line" between dual jobs separates "the *types* of duties performed by a

---

[27] *See generally SmithKline Beecham Corp.*, 567 U.S. at 161 (reasoning the "promotion-work regulation does not distinguish between promotion work and sales; rather, it distinguishes between exempt promotion work and nonexempt promotion work"); *U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 455 (1993) (courts "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law").  In contrast, a counterman who does *all* short order cooking for the group, rather than taking his turn, performs a job different from the tipped jobs in his restaurant.  *See, e.g.*, *Myers v. Copper Cellar Corp.*, 192 F.3d 546, 549–50 (6th Cir. 1999) (distinguishing servers who spent entire shift versus part of shift preparing salads); *Roussell v. Brinker Int'l, Inc*., No. 05–3733, 2008 WL 2714079, at *12–13 (S.D. Tex. 2008) (distinguishing servers who spent entire shifts performing QA duties).

tipped employee," (*see* 1980 Letter), not the *capacity* of duties to generate tips.  *Pellon*, 528 F.

Supp. 2d at 1313 (noting "clarif[ication] that Section 531.56(e) contemplates a 'clear dividing

line' between tipped and non-tipped duties").

Nor does the 20% Rule account for other tip-credit regulations.  Section 531.54 allows

employers to treat busboys and other employees who receive tips only through tip pools—*i.e.*,

who have no duties "directed to producing" their own tips—as tipped employees:

> Where employees practice tip splitting, as where waiters give a portion
> of their tips to the busboys, both the amounts retained by the waiters
> and those given the busboys are considered tips of the individuals who
> retain them, in applying the provisions of section 3(m) and 3(t).

29 C.F.R. § 531.54.[28]  But the 20% Rule brings this provision into direct conflict with §

531.56(e): the same untipped duties that disqualify waiters and bartenders from a tipped

occupation under the 20% Rule—and even if those duties account for just 21% of a week's

time—*qualify* busboys (among others) as "tipped employees" under § 531.54.  *See, e.g.*,

*Montano v. Montrose Rest. Assoc., Inc.*, 800 F.3d 186, 193 (5th Cir. 2015) (noting that tip-pool

cases commonly just "require a tipped employee to have more than a de minimis interaction with

the customers who leave the undesignated tips").[29]  As explained by *Pellon*: "If bus boys, who

presumably interact with customers only on a limited level . . . can qualify as tipped employees

despite not receiving tips directly, then certainly skycaps"—or waiters and bartenders—will

"qualify even if not every task they perform directly results in tips."  528 F. Supp. 2d at 1315.

Indeed, the 20% Rule is an impermissible interpretation of the dual jobs regulation for this

---

[28] The January 15, 2009 Opinion Letter found a "barback" who assisted the bartender and *had no duties directly resulting in tips* was as a tipped employee.  DOL Wage & Hour Div., Opinion Letter FLSA2009-12 (Jan. 15, 2009), *available at* 2009 WL 649014 ("Jan. 15, 2009 Letter").
[29] *See also Kilgore v. Outback Steakhouse of Fla., Inc.*, 160 F.3d 294, 300–02 (6th Cir. 1998) (holding that hosting jobs entailed sufficient customer interaction to qualify as a traditional tipped occupation notwithstanding the absence of duties directed toward producing host tips).

reason alone.  *See United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365,

371 (1988) (finding text unambiguous because only one "permissible meaning[] . . . is

compatible with the rest of the law").

In sum, the 20% Rule does not resolve any ambiguity in the dual jobs regulation.  *Marsh*,

869 F.3d at 1125–26.  Naturally read, the regulation acknowledges that unrelated duties can

create a dual, "untipped" job.  What it does *not* do—and could not do without discarding the

plain meaning, purpose, and context of § 203(t) (*see infra*)—is restrict a tipped *job* to its "tipped"

*tasks.  See generally Auer*, 519 U.S. at 461 (explaining courts defer to agency interpretations of

*ambiguous* regulations where not "plainly erroneous or inconsistent with the regulation").

### 3. Even if otherwise permitted by section 203(t) and the dual jobs regulation, the 20% Rule warrants no deference under *Auer*.

Even if otherwise permitted by § 203(t) and the dual jobs regulation, the 20% Rule would

still—and for multiple reasons—warrant no deference.  *First*, an agency acquires no "special

authority to interpret its own words when, instead of using its expertise and experience to

formulate a regulation, it has elected merely to paraphrase the statutory language."  *Gonzales v.

Oregon*, 546 U.S. 243, 257 (2006).  Nor is deference owed when the agency's interpretation

springs from "a term Congress used in the underlying statute that has been incorporated in the

regulation by the agency."  *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 398 (2008).[30]  But

that is exactly what happened here.  As explained, § 531.56(e) makes no attempt to address

whether, let alone when, *related* duties could create "dual jobs."  Nor would the meaning of

"occupation" likely be narrowed in a regulation clarifying the statutory phrase "[m]ore than $30

---

[30] *See also In Re Kaiser Aluminum Corp.*, 456 F.3d 328, 345 n. 12 (3d Cir. 2006) (declining to grant deference where agency regulation "do[es] nothing more than adopt" the statutory term); *Keys v. Barnhart*, 347 F.3d 990, 994 (7th Cir. 2003) (rejecting *Auer/Chevron* deference to agency position in *amicus* brief where no regulation addressed the disputed question).

a month in tips." 29 C.F.R. § 531.56(e).  Deference is not owed because § 531.56(e)'s treatment of *related* duties merely parrots—rather than defines—the statutory word "occupation."  *Id.* (referring to "[s]uch related duties in an occupation that is a tipped occupation").

 *Second*, the 20% Rule creates "an alternative regulatory approach" that amounts to a new regulation altogether.  In *Christensen v. Harris County*, the Supreme Court rejected deference where "[t]o defer to the agency's position would be to permit the agency, under the guise of interpreting a regulation, to create de facto a new regulation."  529 U.S. at 588.  More recently, the Supreme Court warned that such deference "creates a risk that agencies will promulgate vague and open-ended regulations that they can later interpret as they see fit, thereby frustrating the notice and predictability purposes of rulemaking."  *Smithkline Beecham Corp.*, 567 U.S. at 158 (internal quotations and alterations omitted).  At the very least, the 20% Rule evades the critical functions of notice-and-comment rulemaking.  From an example of duties that do *not* create a dual job, this agency guidance constructs an entire record-keeping regime—mandating minute-by-minute tracking of tipped and untipped tasks, and severely limiting the time tipped employees spend on untipped duties at the beginning or end of a shift.  As the Ninth Circuit recognized in *Marsh,* these are "new substantive rules" outside the scope of any *Auer* deference. *Marsh*, 869 F.3d at 1124.  Nor does this burdensome yet redundant regulatory scheme suggest any power to persuade.  *Id.*; *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (granting deference proportional to "the thoroughness evident in [an agency's consideration], the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade").[31]

---

[31] Though *Marsh* did not "reach or decide whether allegations that an employee performed general maintenance work for an extended period before or after customer interaction began or *Continued on next page...*

***Third***, the DOL's treatment of the 20% Rule does not even suggest that it reflects the agency's "considered judgment."  In *Smithkline Beecham Corp.*, the Supreme Court refused to defer to the DOL's interpretation of "outside salesman" where "strong reasons" suggested it did not represent the DOL's "fair and considered judgment on the matter."  567 U.S. at 155.  The Court found that "[t]he statute and regulations d[id] not provide clear notice" that the pharmaceutical industry's "longstanding practice of treating detailers as exempt outside salesmen transgressed the FLSA"; nor had the DOL initiated any enforcement actions suggesting otherwise.  *Id.* at 157.  It concluded that invoking "the DOL's interpretation of ambiguous regulations to impose potentially massive liability on [the employer] for conduct that occurred well before that interpretation was announced" would result in "unfair surprise."  *Id.* at 155–56.

Imposing massive liability through the 20% Rule would be no less unjustifiable.  When enacted, the 1966 FLSA amendments came with legislators' assurances that pay practices for tipped employees in the hospitality industry had been *preserved*.  Even when drafted in 1988, the 20% Rule appeared in internal guidance (a handbook and fact sheet) that the DOL has specifically disclaimed as devices to "establish[] interpretative policy."  *See* Handbook, *available at* https://www.dol.gov/whd/FOH; *see also Probert v. Family Centered Servs. of Alaska, Inc.*, 651 F.3d 1007, 1012 (9th Cir. 2011) (holding that the Handbook is not "a proper source of interpretive guidance," citing the same disclaimer).  And public guidance—opinion letters interpreting the dual jobs regulation—recognized dual occupations only when tipped employees performed duties unrelated to their tipped jobs *throughout this period*.  Nor did the DOL make its current position clear in the first decade of this millennium.  In a remarkable feint and dodge,

---

ended rises to the level of a dual job," performing *related* duties during "openings" and "closings" would be no different than performing related duties during customer hours—as the DOL's own opinion letter confirms.  *See infra*, note 34.

the agency executed a 2009 opinion letter repudiating *the 20% rule* in 2009, followed by its

withdrawal under a new political administration, *followed by nothing* right up until the rule was

officially embraced in its amicus brief in *Fast*.[32]

       This is a record of "inconsistent thought," not "considered judgment."  *See Chavez*, 2017

WL 2275013, at *7 (finding 20% Rule unentitled to *Auer* deference and noting that courts

deferring to Handbook have not addressed its limiting language).  And it links the 20% Rule to

electoral "vicissitudes," not agency expertise.  *Adair v. ConAgra Foods, Inc.*, 728 F.3d 849, 853

(8th Cir. 2013) (reasoning Department's position is entitled to less deference when its views

"have changed with the vicissitudes of electoral winds, with no reference to its experience or

expertise in the matter").[33]  More dubious still, the agency "never initiated any enforcement

actions"—despite what is almost certainly an industry-wide practice of *not* dividing occupations

into their tipped and untipped tasks.  *Smithkline Beecham Corp.*, 567 U.S. at 157.  Indeed, this

decades-long inaction proved the decisive factor in *Smithkline Beecham Corp*.  While it may be

"possible for an entire industry to be in violation of the [FLSA] for a long time without the Labor

Department noticing," the "more plausible hypothesis" there, as here, is the reverse: "the

Department did not think the industry's practice was unlawful."  *Id.* at 158 (citations omitted);

*Cf. Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2120 (2016) (explaining "unexplained

inconsistency in agency policy [can suggest] an interpretation [is] an arbitrary and capricious

change from agency practice").

---

[32] In yet another opinion letter—never withdrawn—the DOL opined that a bartender's assistant "whose primary job duty is to support the bartender," and who receives tips only from bartender tip pools, is a tipped employee.  Jan. 15, 2009 Letter.  Yet such employees would spend almost *no* time on tasks that directly generate tips.

[33] *See also Miller v. AT & T Corp.*, 250 F.3d 820, 832 (4th Cir. 2001) (finding conflicting agency interpretations "entitled to considerably less deference than a consistently held agency view").

In sum, the 20% Rule limits tip-credit wages in ways not enacted by statute, not imposed through notice and comment rulemaking, and not even consistently applied by the agency itself. Accordingly, the "20% Rule" is owed no deference, and Plaintiffs have alleged no violation of the FLSA.

**B.      Plaintiffs' "unrelated duties" claims fail as a matter of law.**

Plaintiffs finally allege that BWW violated the FLSA through "a policy and practice of paying its Tip-Credit Employees sub-minimum, tip-credit wages even when it requires those employees to perform non-tipped work that is *unrelated* to their tipped occupation, such as sweeping, mopping, and vacuuming restaurant floors, preparing food, including slicing fruit, rolling silverware, and washing the restaurant's dishes."  TAC ¶ 13.  This claim acknowledges § 531.56(e)'s distinction between related and unrelated duties; but none of the alleged duties crosses the "clear dividing line" between work traditionally performed by waiters and bartenders and the work of untipped employees.

Indeed, Plaintiffs ignore the plain language of the dual jobs regulation itself, which describes cleaning and setting tables, making toast, and washing dishes or glasses as work related to serving.  They ignore DOL opinion letters that classify similar duties as incidental except where assigned to only one employee.[34]  Nor do Plaintiffs' allegations account for what the DOL's own website identifies as customary server duties, including the duty to:

- "Roll silverware, set up food stations or set up dining areas to prepare for the next shift or for large parties;"

---

[34] *See* 1980 Letter (advising that time spent by tipped employees after the restaurant closed to clean the salad bar, place condiments crocks in the cooler, clean and stock the server station, clean and reset tables, and vacuum the dining room carpet "constitute[d] tipped employment within the meaning," of 29 § C.F.R. § 531.56(e) [i]nsofar as the after-hours clean-up" was "assigned generally to the waitress/waiter staff").  Only the hours spent preparing a salad bar were classified as "essentially the activities performed by chefs."  1979 Letter.

- "Stock service areas with supplies such as coffee, food, tableware, and linens;"

- "Remove dishes and glasses from tables or counters, take them to kitchen for cleaning;"

- "Perform cleaning duties, such as sweeping and mopping floors, vacuuming carpet, tidying up server station, taking out trash, or checking and cleaning bathroom;"

- "Perform food preparation duties such as preparing salads, appetizers, and cold dishes, portioning desserts, and brewing coffee;" and

- "Garnish and decorate dishes in preparation for serving."[35]

And merely that that these duties have industry-wide names—"opening duties," "closing duties," and "sidework"—places them squarely within server occupations.

As other circuits have concluded, this theory of relief is "untenable":

> [S]ervers engaged in making coffee, cleaning tables, and several other activities that the regulation or handbook give as examples of duties that may be performed by persons paid at the tip-credit rate. <u>Other duties</u>. . . such as ensuring that hot cocoa is ready to serve and that strawberries are spread on the waffles, <u>are of the same general kind. [Even *Fast*] concluded that cutting fruit and cleaning blenders are related to a server's tipped tasks</u> . . . .

---

[35] The DOL's list of bartender duties is similarly expansive, including cleaning glasses, utensils, and bar equipment, bars, work areas, and tables, as well as food preparation duties from slicing and pitting fruit to preparing appetizers. *Summary Report for Waiters & Waitresses*, O-Net Online, *available at* https://www.onetonline.org/link/summary/35-3031.00.  O-Net is "developed under the sponsorship of the [DOL]."  *About O-Net*, O-Net Resource Center, *available at* https://www.onetcenter.org/overview.html.  Even in 1966, the federal "Occupational Outlook Handbook" and Food Service Industry Training Manual listed waiter duties like "dusting and cleaning chairs, tables, and window ledges" and stocking, and referred to "closing duties."  *See* U.S. Department of Labor, Bureau of Labor Statistics, Occupational Outlook Handbook (Bulletin No. 1450), 350, 777 (1966–67), attached as **Exhibit J** to the Murphy Aff.; Blaker, Gertrude, U.S. Dep't of Health, Educ., and Welfare, Office of Educ., Food Service Industry: Training Programs and Facilities 85-87 (1961), attached as **Exhibit K** to the Murphy Aff.

*Schaefer*, 829 F.3d at 554–55 (emphasis added).  The allegation that waiters sweep floors or roll silverware does not amount to a plausible claim.

Neither have Plaintiffs alleged that less typical duties entitle them to minimum wage pay. In *Schaefer,* the Seventh Circuit acknowledged that some duties performed by the defendant's servers were harder to classify than others; but it concluded that even time spent on "unrelated" duties would not require the minimum wage if *de minimis*.  *Id.*  Reasoning that Congress did not intend to "convert federal judges into time-study professionals," the court held all time can be treated the same way when the "vast majority" warrants particular treatment.  *Id.* at 555.

The same principle entitles BWW to judgment here.  Nowhere does the TAC allege that discrete tasks took more than *de minimis* time—indeed, nowhere does it allege that a discrete task required time of any particular amount.  So even if "consistent with" liability, allegations that Plaintiffs received tip-credit wages for performing untipped jobs stop "short of the line between possibility and plausibility of entitlement to relief."  *Iqbal*, 556 U.S. at 678 (citations omitted).  Plaintiffs' claims that BWW violated minimum wage provisions of the FLSA by directing its servers and bartenders to perform "unrelated work" fail as a matter of law.  *See generally Hart v. Crab Addison, Inc.*, No. 13-cv-6458 CJS, 2014 WL 5465480, at *5 (W.D.N.Y. Oct. 28, 2014) (pleading a plausible tip-credit claim requires Plaintiffs to first allege plausible facts showing they performed work ineligible for tip credit compensation).

## IV. CONCLUSION

Plaintiffs' allegations that BWW paid tip-credit wages while requiring them to perform untipped duties state no plausible claim for relief.  Rule 12(c) therefore entitles BWW to judgment on Plaintiffs' federal claims.

Dated: October 20, 2017.

**FAEGRE BAKER DANIELS**

*s/ Andrew B. Murphy*
Andrew B. Murphy
  *Andrew.Murphy@FaegreBD.com*
(admitted pro hac vice)
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
Telephone: (612) 766–8897
Facsimile: (612) 766–1600

Gregory P. Abrams
  *Gregory.Abrams@FaegreBD.com*
(admitted pro hac vice)
311 S. Wacker Dr., Suite 4300
Chicago, IL 60606
Telephone: (312) 212-6500
Facsimile: (312) 212-6501

**HODGSON RUSS LLP**

Paul I. Perlman
  *pperlman@hodgsonruss.com*
The Guaranty Building
140 Pearl Street, Suite 100
Buffalo, New York 14202
Telephone: (716) 848–1479
Facsimile: (716) 819–4616

**ATTORNEYS FOR DEFENDANT
BLAZIN WINGS, INC. d/b/a
BUFFALO WILD WINGS**

US.114714731.02