IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALISHA ROBBINS and AMBER GRANDSTAFF, on behalf of themselves and all others similarly situated, known and unknown,<br><br>          Plaintiffs,<br><br>   v.<br><br>BLAZIN WINGS, INC. d/b/a BUFFALO WILD WINGS,<br><br>          Defendant. | Civil Action No.<br>15-06340 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ORDER APPROVING SETTLEMENT OF COLLECTIVE ACTION AND <u>AUTHORIZING NOTICE OF SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ............................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.................................................... 1

    I.     Plaintiffs' Allegations .................................................................................. 1

    II.    Investigation, Initial Related Litigation, and Early Settlement Negotiations ......... 2

    III.   Arbitration for Opt-In Plaintiffs, the *Derouchie* Case, and Continued Litigation .. 3

        A.    Arbitration for Opt-In Plaintiffs............................................... 3

        B.    The *Derouchie* Litigation....................................................... 4

        C.    Continued *Robbins* Litigation .................................................. 4

    IV.   Renewed Settlement Negotiations ............................................................. 5

SUMMARY OF SETTLEMENT TERMS..................................................................... 6

    I.     The Settlement Fund ................................................................................... 6

    II.    Notice Process.............................................................................................. 6

    III.   Settlement Awards ...................................................................................... 7

    IV.   Releases........................................................................................................ 8

    V.    Attorneys' Fees and Costs ........................................................................... 9

    VI.   Service Payments ......................................................................................... 9

    VII.  Settlement Administrator ........................................................................... 9

ARGUMENT .................................................................................................................. 10

    I.     A One-Step Approval Process Is Standard for FLSA Settlements. ..................... 10

    II.    The Settlement Is Fair and Reasonable and Should be Approved....................... 11

    III.   The Service Payments Should Be Approved as Fair and Reasonable. ................ 15

    IV.   The Court Should Approve Plaintiffs' Attorneys' Fees and Costs as Fair and Reasonable. ................................................................................................. 17

        A.    The Court Should Award Attorneys' Fees As a Percentage of the Fund. 17

        B.    Analysis of the Market for Legal Services Supports Plaintiffs' Request. 19

        C.    The Court Should Also Approve Payment of Plaintiffs' Counsel's Expenses. ................................................................................. 21

CONCLUSION............................................................................................................... 22

# TABLE OF AUTHORITIES

CASES                                                                              PAGE(S)

*Alleyne v. Time Moving & Storage Inc.,*
   264 F.R.D. 41 (E.D.N.Y. 2010) ................................................................ 20

*Anwar v. Transp. Sys., Inc.,*
   No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014) ............................................ 10

*Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.,*
   No. 96 Civ. 0583, 2002 WL 1315603 (S.D.N.Y. June 17, 2002) ............................................ 18

*Beckman v. KeyBank, N.A.,*
   293 F.R.D. 467 (S.D.N.Y. 2013) ............................................ 10, 11, 20, 21

*Boeing Co. v. Van Gemert,*
   444 U.S. 472 (1980) ................................................................ 17

*Bozak v. Fedex Ground Package Sys., Inc.,*
   No. 11 Civ. 738, 2014 WL 3778211 (D. Conn. July 31, 2014) ............................................ 10, 15

*Bravo v. 57th Rest. Assocs. LLC,*
   No. 14 Civ. 8492 (S.D.N.Y. Apr. 9, 2015) ................................................................ 10

*Briggs v. PNC Fin. Servs. Grp., Inc.,*
   No. 15 Civ. 10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) ............................................ 10, 19

*Camden I Condo. Ass'n, Inc. v. Dunkle,*
   946 F.2d 768 (11th Cir. 1991) ................................................................ 18, 19

*Campos v. Goode,*
   No. 10 Civ. 0224, 2011 WL 9530385 (S.D.N.Y. Mar. 4, 2011) ............................................ 12

*Capsolas v. Pasta Res., Inc.,*
   No. 10 Civ. 5595, 2012 WL 4760910 (S.D.N.Y. Oct. 5, 2012) ............................................ 11

*Castillo v. Noodles & Co.,*
   No. 16 Civ. 03036, 2016 WL 7451626 (N.D. Dec. 23, 2016) ............................................ 19

*Chavarria v. N.Y. Airport Serv., LLC,*
   875 F. Supp. 2d 164 (E.D.N.Y. June 25, 2012) ................................................................ 20

*Cohan v. Columbia Sussex Mgmt., LLC*,
No. 12 Civ. 3203, 2018 WL 4861391 (E.D.N.Y. Sept. 28, 2018) ........................................... 19

*In re Colgate-Palmolive Co. ERISA Litig.*,
36 F. Supp. 3d 344 (S.D.N.Y. 2014) ..................................................................................... 17

*Diaz v. E. Locating Serv. Inc*,
No. 10 Civ. 4082, 2010 WL 5507912 (S.D.N.Y. Nov. 29, 2010)........................................... 21

*Dorn v. Eddington Sec., Inc.*,
No. 08 Civ. 10271, 2011 WL 9380874 (S.D.N.Y. Sept. 21, 2011)......................................... 13

*Espenscheid v. DirectSat USA, LLC*,
705 F.3d 770 (7th Cir. 2013) ................................................................................................. 10

*Fast v. Applebee's Int'l, Inc.*,
638 F.3d 872 (8th Cir. 2011) ................................................................................................. 13

*Florin v. Nationsbank of Georgia, N.A.*,
34 F.3d 560 (7th Cir. 1994) ................................................................................................... 18

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005) .......................................................................................... 16

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013).......................................................................................................... 10

*Gilliam v. Addicts Rehab. Ctr. Fund*,
No. 05 Civ. 3452, 2008 WL 782596 (S.D.N.Y. March 24, 2008) .......................................... 20

*Goldberger v. Integrated Res., Inc.*,
209 F.3d 43 (2d Cir. 2000) ............................................................................................. 20, 21

*Hanifin v. Accurate Inventory & Calculating Serv., Inc.*,
No. 11 Civ. 1510, 2014 WL 4352060 (N.D.N.Y. Aug. 20, 2014) .......................................... 11

*Hoffmann-LaRoche Inc. v. Sperling*,
493 U.S. 165 (1989) .............................................................................................................. 10

*In re Indep. Energy Holdings PLC Sec. Litig.*,
302 F. Supp. 2d 180 (S.D.N.Y. 2003) ................................................................................... 21

*In re Ira Haupt & Co.*,
304 F. Supp. 917 (S.D.N.Y. 1969) ........................................................................................ 12

*Johnson v. Brennan*,
No. 10 Civ. 4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011)........................................ 19, 20

*Kirchoff v. Flynn*,
786 F. 2d 320 (7th Cir. 1986) ................................................................................. 19

*Knox v. The Jones Grp.*,
No. 15 Civ. 1738, 2017 WL 3834929 (S.D. Ind. June 13, 2018)........................................ 10, 14

*Lizondro-Garcia v. Kefi LLC*,
300 F.R.D. 169 (S.D.N.Y. 2014)................................................................................. 10

*In re Lloyd's Am. Trust Fund Litig.*,
No. 96 Civ. 1262, 2002 WL 31663577 (S.D.N.Y. Nov. 26, 2002)..................................... 18, 19

*Lovaglio v. W & E Hospitality, Inc.*,
No. 10 Civ. 7351, 2012 WL 2775019 (S.D.N.Y. July 6, 2012) ............................................ 16

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) ................................................................................. 11

*Maley v. Del Glob. Techs. Corp.*,
186 F. Supp. 2d 358 (S.D.N.Y. 2002) ...................................................................... 20

*Marsh v. J. Alexander's LLC*,
869 F.3d 1108 (9th Cir. 2017) ................................................................................. 4

*Marsh v. J. Alexander's LLC*,
905 F.3d 610 (9th Cir. 2018) ................................................................................. 5, 13

*McKenna v. Champion Int'l Corp.*,
747 F.2d 1211 (8th Cir. 1984) ................................................................................. 10

*Medley v. Am. Cancer Soc.*,
No. 10 Civ. 3214, 2010 WL 3000028 (S.D.N.Y. July 23, 2010) ............................................ 10

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993)................................................................................. 15

*In re Milos Litig.*,
No. 08 Civ. 6666, 2010 WL 199688 (S.D.N.Y. Jan. 11, 2010) ............................................ 14

*Morris v. Affinity Health Plan, Inc.*,
No. 09 Civ. 1932, 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011) ............................................ 14

*Osman v. Grube, Inc.*,
    No. 16 Civ. 00802, 2018 WL 2095172 (N.D. Ohio May 4, 2018)............................................. 10

*In re PaineWebber Ltd. P'ships Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................................... 12

*Parker v. Jekyll and Hyde Entertainment Holdings, LLC*,
    No. 08 Civ. 7670, 2010 WL 532960 (S.D.N.Y Feb. 9, 2010).................................................. 16

*Powell v. Lakeside Behavioral Healthcare, Inc.*,
    No. 11 Civ. 719, 2011 WL 5855516 (M.D. Fla. Nov. 22, 2011) ............................................. 10

*Prena v. BMO Fin. Corp.*,
    No. 15 Civ. 09175, 2015 WL 2344949 (N.D. Ill. May 15, 2015) ....................................... 10, 15

*Reyes v. Altamarea Group, LLC*,
    No. 10 Civ. 6451, 2011 WL 4599822 (S.D.N.Y. Aug. 16, 2011) ....................................... 11, 16

*In re Rite Aid Corp. Securities Litig.*,
    396 F.3d 294 (3rd Cir. 2005) ................................................................................................... 17

*Scovil v. FedEx Ground Package System, Inc.*,
    No. 10 Civ. 515, 2014 WL 1057079 (D. Me. Mar. 14, 2014).................................................. 15

*Sewell v. Bovis Lend Lease, Inc.*,
    No. 09 Civ. 6548, 2012 WL 1320124 (S.D.N.Y. April 16, 2012) ............................... 16, 17, 21

*Skelton v. General Motors Corp.*,
    860 F.2d 254 (7th Cir. 1988) ................................................................................................... 18

*Soto v. Wings 'R Us Romeoville, Inc.*,
    No. 15 Civ. 10127, 2018 WL 1875296 (N.D. Ill. Apr. 16, 2018) ............................................. 14

*Sukhnandan v. Royal Healthcare of Long Island LLC*,
    No. 12 Civ. 4216, 2014 WL 3778173 (S.D.N.Y. July 31, 2014) ............................................. 17

*In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*,
    56 F.3d 295 (1st Cir. 1995)....................................................................................................... 18

*Torres v. Gristede's Operating Corp.*,
    No. 04 Civ. 3316, 2010 WL 5507892 (S.D.N.Y. Dec. 21, 2010) ............................................. 11

*Toure v. Amerigroup Corp.*,
    No. 10 Civ. 5391, 2012 WL 3240461 (E.D.N.Y. Aug. 6, 2012).............................................. 16

*Vaccaro v. New Source Energy Partners L.P.*,
   No. 15 Civ. 8954, 2017 WL 6398636 (S.D.N.Y. Dec. 14, 2017) ............................................ 12

*Velez v. Majik Cleaning Serv., Inc.*,
   No. 03 Civ. 8698, 2007 WL 7232783 (S.D.N.Y. June 25, 2007) ................................ 12, 15, 16

*Wal-Mart Stores v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005) ........................................................................................ 17, 18, 20

*Woods v. N.Y. Life Ins. Co.*,
   686 F.2d 578 (7th Cir. 1982) .................................................................................................. 11

*In re Zyprexa Prods. Liab. Litig.*,
   594 F.3d 113 (2d Cir. 2010) .................................................................................................... 17

## STATUTES

29 U.S.C. § 206(a) ............................................................................................................................. 2

## RULES

Federal Rule of Civil Procedure 23 ................................................................................................ 2

## OTHER AUTHORITIES

Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*,
   10 Emp. Rts. & Emp. Pol'y J. 395 (2006) ............................................................................. 16

## INTRODUCTION

Plaintiffs respectfully submit this unopposed Motion for an Order Approving Settlement of Collective Action and Authorizing Notice of Settlement ("Motion").  The $3,950,000 settlement of this wage and hour collective action reached by Plaintiffs and Defendant Blazin Wings, Inc. d/b/a Buffalo Wild Wings ("Defendant" or "BWW") satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") settlement.  Plaintiffs seek an order: (1) approving as fair and adequate the settlement set forth in the Collective Action Settlement Agreement ("Settlement Agreement"), attached as Exhibit 1 to the Declaration of Douglas M. Werman ("Werman Decl.");[1] (2) approving service payments to Named Plaintiffs and other Service Payment Recipients; (3) approving attorneys' fees of one-third of the settlement plus reimbursement of reasonable costs and expenses of $286,016.02; (4) approving the fees and costs of Rust Consulting, Inc. as the third-party Settlement Administrator; and (5) incorporating the other terms of the Settlement Agreement.  Plaintiffs request that the Court enter the proposed order, attached as Exhibit 1.

This settlement, which followed a thorough investigation, substantial motion practice, and significant discovery, satisfies the criteria for approval of a FLSA collective action settlement because it resolves a bona-fide dispute, was reached after contested litigation, was the result of arm's-length settlement negotiations, assisted by private mediator, between experienced counsel, and provides a good value to the workers whom it will benefit.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.    Plaintiffs' Allegations

Plaintiffs Alisha Robbins, Amber Grandstaff, Kristy Valenzuela, Kerry McMenamin,

---

[1]    Unless otherwise indicated, all exhibits are attached to the Werman Declaration.  Unless otherwise stated, all capitalized terms herein reflect the definitions in the Settlement Agreement.

Heather Pierce, Jayme King, Jami DeVries, Daniel Knapp, and Melinda Reyes worked as Tipped

Workers at Defendant's Buffalo Wild Wings restaurants in New York, Arizona, Colorado,

Florida, Illinois, Iowa, Pennsylvania, and Wisconsin, respectively.  Third Am. Compl. ("TAC")

¶¶ 2-9 (ECF No. 155); Werman Decl. ¶ 12.[2]  BWW owns and operates approximately 473

Buffalo Wild Wing restaurants throughout the United States, and as of 2014 it employed Tipped

Workers at approximately 390 of those restaurants.  *Id.*

        Plaintiffs allege that Defendant failed to pay them and other Tipped Workers the full

minimum wage required under 29 U.S.C. § 206(a) and parallel state laws.  *Id.* ¶ 13.  Instead,

Defendant improperly took a "tip credit" and paid Plaintiffs a reduced minimum wage.  *Id.*

Plaintiffs allege that Defendant was not allowed to take a tip credit because it regularly required

Plaintiffs and other Tipped Workers to perform (1) non-tip producing duties that were related to

their tipped duties for more than 20 percent of their shift ("side work") or (2) non-tip producing

duties that were unrelated to their tip producing duties ("dual jobs").  *Id.*  Defendant denies any

violation of 29 U.S.C. § 206(a) and parallel state laws, and contends that all tipped workers were

lawfully and sufficiently compensated.

## II.     Investigation, Initial Related Litigation, and Early Settlement Negotiations

        Plaintiffs' Counsel conducted a thorough investigation into the merits of Plaintiffs'

potential claims and Defendant's defenses.  *Id.* ¶ 14.  Plaintiffs filed their Complaint on June 2,

2015, alleging that BWW violated the FLSA by unlawfully taking a tip credit while requiring

them and other Tipped Workers at BWW restaurants to perform non-tip producing side work

and/or dual jobs.  *Id.*  Plaintiffs brought nationwide collective action claims under the FLSA and

---

[2]     "Tipped Worker" means employees for whom Defendant took a tip credit against the
minimum wage. Ex. 1 (Settlement Agreement) ¶ 1.24. Tipped Workers include, but is not
limited to, servers, bartenders, and other employees who worked in states where Defendant paid
those employees sub-minimum tip-credit rate of pay.

New York Labor Law ("NYLL") class claims under Federal Rule of Civil Procedure 23 ("Rule 23"). *Id.*

On September 9, 2015, Plaintiffs filed a motion for conditional certification of their FLSA claims, and on March 18, 2016, the Court granted Plaintiffs' motion. *Id.* ¶ 15. Plaintiffs mailed a court-authorized notice to over 62,000 servers and bartenders, and approximately 5,513 servers and bartenders opted into this litigation. *Id.* After the opt-in period closed, the parties began to engage in substantial discovery. Defendant deposed a total of twenty-five opt-in plaintiffs and six Named Plaintiffs, Plaintiffs took a limited Rule 30(b)(6) deposition, and the parties exchanged and reviewed thousands of documents. *Id.* During this time, on September 27, 2016, Plaintiffs also amended their complaint to add proposed Rule 23 class action claims under state minimum wage laws in Arizona, Colorado, Florida, Illinois, Iowa, Pennsylvania, and Wisconsin and to nullify Defendant's second motion to dismiss. *Id.*

The parties agreed to discuss a potential resolution of the litigation and met with an experienced mediator, Michael Dickstein, on October 24, 2016. *Id.* ¶ 16. However, the parties were unable to resolve the case at that time. *Id.* On April 13, 2017, the mediator also met with Defendant to continue discussing settlement, but the parties did not engage in any further negotiations following the unsuccessful mediation in October 2016. *Id.*

## III.   Arbitration for Opt-In Plaintiffs, the *Derouchie* Case, and Continued Litigation

### A.   Arbitration for Opt-In Plaintiffs

On July 11, 2017, the parties entered into a stipulation agreeing that 821 opt-in plaintiffs who signed executed arbitration agreements (of 5,513 total opt-ins) would pursue their claims in arbitration. *Id.* ¶ 17. The Court stayed these opt-in plaintiffs' claims pending arbitration on July 31, 2017. *Id.* On October 25, 2017, Plaintiffs' Counsel initiated arbitration proceedings on behalf of 390 of these 821 opt-in plaintiffs by filing Demands for Arbitration with the American

Arbitration Association ("AAA").  *Id.* ¶ 18.  In its Answers and Counterclaims, Defendant disputed AAA's jurisdiction to administer the arbitrations, asserting those 390 opt-in plaintiffs had not made a good-faith effort to comply with the arbitrator-selection provision of the Defendant's Arbitration Agreement.  *Id.*  The parties nonetheless proceeded with selecting arbitrators and participated in several initial management conference calls with appointed arbitrators.  *Id.*  On March 24, 2018, the AAA notified the parties that, due to a dispute regarding payment of administrative fees for all 390 opt-in plaintiffs/claimants, it would "cease administration" of the arbitrations.  *Id.* ¶ 19.

### B.    The *Derouchie* Litigation

On September 19, 2017, individuals represented by Plaintiffs' Counsel filed an additional related case, *Derouchie v. Blazin Wings, Inc. d/b/a Buffalo Wild Wings* ("*Derouchie*"), in the U.S. District Court for the Western District of New York.  *Id.* ¶ 20; *see also* Compl., *Derouchie*, Case No. 17 Civ. 06657 (W.D.N.Y. Sept. 19, 2017), which was assigned to this Court.  Werman Decl. ¶ 20.  The *Derouchie* Plaintiffs sued on behalf of New York Tipped Workers challenging Defendant's practice of claiming a "tip credit" in order to pay servers and bartenders sub-minimum wages.  *Id.* ¶ 20; *Derouchie* Am. Compl. ¶¶ 1-7.  They alleged that Defendant was not entitled to claim a tip credit at all because it failed to provide proper notification, as required by the applicable provisions of the NYLL, and that Defendant also failed to provide statutorily-required wage notices and wage statements.  Werman Decl. ¶ 20; *Derouchie* Am. Compl. ¶¶ 3-7.  It is Defendant's position that it complied the Fair Labor Standards Act and New York Labor Law and lawfully took tip credits against the workers' minimum wage.

### C.    Continued *Robbins* Litigation

On October 20, 2017, Defendant filed a motion for judgment on the pleadings in this litigation.  Werman Decl. ¶ 21; ECF Nos. 188-89.  Defendant relied heavily on *Marsh v. J.*

*Alexander's LLC*, 869 F.3d 1108, 1112 (9th Cir. 2017), which held that the same U.S.

Department of Labor guidance supporting Plaintiffs' claims was not entitled to deference.

Werman Decl. ¶ 21.  Defendant argued that Plaintiffs' side work claims therefore failed as a

matter of law.  *Id.* ¶ 21; *see also* ECF No. 189.  The Court's ruling on that motion was delayed

pending the Ninth Circuit's reconsideration *en banc* of the *Marsh* decision, with oral argument

on Defendant's motion scheduled for October 11, 2018.  Werman Decl. ¶ 21; ECF No. 233.

Prior to resolution of Defendant's Motion on the Pleadings, the Ninth Circuit, sitting *en banc*,

reversed the *Marsh* decision and upheld the U.S. Department of Labor's interpretation of the

FLSA and its own regulations.  Werman Decl. ¶ 21; *see also Marsh v. J. Alexander's LLC*, 905

F.3d 610 (9th Cir. 2018) (en banc).

      In the winter of 2017, the parties also resumed discovery.  Werman Decl. ¶ 22.  The

Court allowed Defendant to serve written discovery on 390 opt-in plaintiffs and to depose 53

additional opt-in plaintiffs, beyond the 25 opt-in plaintiffs and six named plaintiffs already

deposed.  *Id.*  To date, approximately 358 opt-in plaintiffs and six named plaintiffs have

responded to written discovery, and Defendant deposed nine additional opt-in plaintiffs.  *Id.*  For

every opt-in deposed, Plaintiffs were permitted to depose a supervisor or co-worker of that opt-

in.  Plaintiffs noticed nine manager depositions and deposed one corporate representative and

five non-party declarants.  *Id.*

## IV.    Renewed Settlement Negotiations

      In spring 2018, the parties agreed to pursue a second mediation to discuss a potential

global resolution of the pending litigations and arbitrations.  *Id.* ¶ 23.  The Court stayed this case

and *Derouchie*, including its consideration of several pending motions.  *Id.*; ECF No. 238.  The

parties also agreed to halt their attempts to resolve the ongoing administrative fee dispute in the

pending arbitrations in order to focus on discussing settlement.  Werman Decl. ¶ 23.

On September 14, 2018, the parties participated in a mediation session in Atlanta, Georgia with experienced class action mediator Hunter Hughes.  *Id.* ¶ 24.  After a full-day mediation, the parties reached an agreement on the essential terms of resolution of the litigation at that time and continued negotiating the specific parameters of the Settlement Agreement in the months following the mediation.  *Id.*

## SUMMARY OF SETTLEMENT TERMS

### I.      The Settlement Fund

Pursuant to the Settlement Agreement, Defendant will pay $3,950,000 to resolve the collective action claims of Named Plaintiffs and all opt-in Plaintiffs, including those whose claims were stayed pending arbitration (together, "Plaintiffs").  Ex. 1 (Settlement Agreement) ¶¶ 1.10, 1.17, 3.1(A).  The Gross Settlement Amount covers Plaintiffs' payments, any Court-approved Service Payments to Service Payment Recipients, any Court-approved attorneys' fees and costs, and the Settlement Administrator's fees and costs.  *Id.* ¶ 1.10.  The Gross Settlement Amount does not include Employer Payroll Taxes.  *Id.* ¶ 1.9.

### II.     Notice Process

If the Settlement Agreement is approved, within 10 days of approval, Defendant will provide Plaintiffs' Counsel and the Settlement Administrator contact information, in electronic form, for all Plaintiffs.  *Id.* ¶ 2.4(A).  Within 14 days of the Approval Order, Plaintiffs will provide the Settlement Administrator with updated addresses, email addresses, and telephone numbers that Plaintiffs have provided to Plaintiffs' Counsel during the course of the Litigation. *Id.*

After performing a skip trace to obtain the most current address for each Plaintiff, the Settlement Administrator will send Settlement Notices and Settlement Checks by First Class

U.S. mail to Plaintiffs.  *Id.* ¶ 2.4(B).  Plaintiffs will have until the end of the Acceptance Period, or the 150-day period following the mailing or re-mailing of a Settlement Check, to cash their Settlement Checks.  *Id.* ¶ 1.1, 2.4(D).  The end of the Acceptance Period will be clearly identified on the Settlement Notices and the Settlement Checks.  *Id.* ¶ 2.4(D).

III.    **Settlement Awards**

All Plaintiffs will be paid a pro-rata portion of the Net Settlement Fund pursuant to an allocation formula based on their actual individual minimum wages owed.  For each Plaintiff who worked outside of New York, his or her owed wages will be calculated by subtracting the amount of wages paid at the tip-credit minimum wage from the amount of wages that would have been earned if that Plaintiff was paid the applicable minimum wage for all hours worked between 3 years and 208 days prior to the Plaintiff's opt-in date[3] and June 30, 2018 according to Defendant's Pay Data and multiplying that value by 30%.  *Id.* ¶ 3.4(D)(1).  For each Plaintiff who worked in New York, his or her owed wages will be calculated by subtracting the amount of wages paid at the tip-credit minimum wage from the amount of wages that would have been earned if that Plaintiff was paid the applicable minimum wage for all hours worked between June 2, 2009 and June 30, 2018 according to Defendant's Pay Data and multiplying that value by 100% to account for additional New York statutory claims and penalties.  *Id.* ¶ 3.4(D)(2).

All Plaintiffs will be computed to be owed an amount in Liquidated Damages that equals their amount of Owed Minimum Wages.  *Id.* ¶ 3.4(D)(3).  All Plaintiffs' individual Owed Minimum Wages and Liquidated Damages will be summed to calculate each Plaintiff's Individual Amount Owed.  *Id.* ¶ 3.4(D)(4).  All Plaintiffs' Individual Amounts Owed will be summed to calculate the Total Owed to all Plaintiffs, and Plaintiffs' Counsel will then divide

---

[3]    Florida Plaintiffs' individual owed minimum wages were calculated for the time period September 27, 2011 to June 30, 2018.

each Plaintiff's Individual Amount Owed by the Total Owed to calculate each Plaintiff's Portion of the Net Settlement Fund. *Id.* ¶ 3.4(D)(5)-(6).  Finally, Plaintiffs' Counsel will multiple each person's Portion of the Net Settlement Fund by the Net Settlement Fund to calculate their individual Settlement Award. *Id.* ¶ 3.4(D)(7).  If a Plaintiff's Settlement Award is less than $25, the Plaintiff's Settlement Award will be increased to the Minimum Settlement Award of $25. *Id.* ¶ 3.4(D)(8).

Within 10 business days after the Approval Order, Defendant will deposit the Gross Settlement Amount into a Qualified Settlement Fund established by the Settlement Administrator. *Id.* ¶¶ 1.19, 3.1(B).

## IV.    Releases

Only those individuals who cash their Settlement Checks will release any claims. *Id.* ¶¶ 4.1(A).  The Settlement Agreement provides that every Plaintiff who cashes a Settlement Check will release Defendant and the Releasees from any claims asserted in the Third Amended Class Action Complaint, including any claims for alleged failure to pay the minimum wage under the Fair Labor Standards Act ("FLSA"); and parallel state minimum wage laws, including but not limited to, the laws of the states of New York, Arizona, Colorado, Florida, Illinois, Iowa, Pennsylvania, and Wisconsin; and any claim for liquidated or multiple damages, penalties, restitution, interest, attorneys' fees or costs, declaratory relief, equitable relief, or injunctive relief for any such claims, within the time periods identified in Section 4.1(B) of the Settlement Agreement.  Plaintiffs who worked in New York will also release all claims pled in the Complaint in *Derouchie v. Blazin Wings, Inc.*, No. 17 Civ. 06657, Western District of New York, including the value of the tip credit for time worked over 40 hours in an individual

workweek.[4]

## V.   Attorneys' Fees and Costs

With Court approval, Plaintiffs' Counsel will receive one-third of the Gross Settlement Amount as attorneys' fees, plus reimbursement of reasonable out-of-pocket costs incurred in the litigation of this action.  *Id.* ¶ 3.2(A).

## VI.   Service Payments

In addition to their payments under the allocation formula, Service Payment Recipients seek Court approval for Service Payments from the Gross Settlement Amount for services they rendered to the Plaintiffs.  *Id.* ¶ 3.3(A).  Specifically, Named Plaintiffs Alisha Robbins and Amber Grandstaff each request $12,500, Plaintiffs Kristy Valenzuela, Kerry McMenamin, Heather Pierce, Jayme King, Jami DeVries (f/k/a Jami Bowen), Daniel Knapp and Melinda Reyes each request $7,000; and opt-in Plaintiffs who were deposed, Alexandra Sloan, Amanda Demicchi, Brandi Chaslow, Elizabeth Szyzska, Giuliana Asmad, Graham Rosenberg, Haley Machutta, Jennifer Donegan, Jennifer Johnson, Jacqueline Gray, John Vasquez, Karen Schutz, Katherine Robinson, Kathy Wanty, Kimberlee Knox, Kimberly Roberts, Kristin Cook, Leslie Andrews, Matthew Devine, Megan Lindsey Womeldorf, Melissa Dunn, Monica Lewis, Sandra Johnson, Shanna Abdul Hakim, Stephanie Croy, Tara Marie Carroll, Tina Spray, Deanna McElhenney, Zachary Gutierrez, Lindsey Argroves, Lori Mayo, Megan French, Maryellen Savage, and Valerie Gailor Geloso, each request $2,000.  *Id.*

## VII.   Settlement Administrator

The Parties have retained Rust Consulting, a third-party class action claims administrator, to serve as the Settlement Administrator.  Werman Decl. ¶ 50.  The Settlement Administrator's

---

[4]   On February 4, 2019, the Parties entered into a separate settlement agreement resolving the *Derouchie* litigation.

costs and expenses shall be paid from the Gross Settlement Fund.  *Id.*; Ex. 1 (Settlement

Agreement) ¶ 1.10.

## ARGUMENT

**I.      A One-Step Approval Process Is Standard for FLSA Settlements.**

In the Second Circuit and throughout the country, a one-step approval process is the norm

in FLSA settlements that do not include Rule 23 classes.[5]  Unlike a Rule 23 class action,

collective actions under Section 216(b) require workers to affirmatively opt in to the litigation.

*See Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 771 (7th Cir. 2013); *see also Genesis*

*Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally

different from collective actions under the FLSA.").  Because under the FLSA, "parties may

elect to opt in but a failure to do so does not prevent them from bringing their own suits at a later

date," FLSA collective actions do not implicate the same due process concerns as Rule 23

actions.  *McKenna v. Champion Int'l Corp.*, 747 F.2d 1211, 1213 (8th Cir. 1984), *abrogated on*

*other grounds by Hoffmann-LaRoche Inc. v. Sperling*, 493 U.S. 165 (1989); *Lizondro-Garcia v.*

*Kefi LLC*, 300 F.R.D. 169, 179 (S.D.N.Y. 2014) (same).

Accordingly, courts do not apply the exacting standards for approval of a class action

---

[5]      *See, e.g.*, *Prena v. BMO Fin. Corp.*, No. 15 Civ. 09175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15 Civ. 10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016); *Knox v. The Jones Grp.*, No. 15 Civ. 1738, 2017 WL 3834929, at *2 (S.D. Ind. June 13, 2018); *Osman v. Grube, Inc.*, No. 16 Civ. 00802, 2018 WL 2095172, at *2 (N.D. Ohio May 4, 2018); *Anwar v. Transp. Sys., Inc.*, No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014) (attached to  Werman Decl. as Ex. 2); *Bravo v. 57th Rest. Assocs. LLC*, No. 14 Civ. 8492 (S.D.N.Y. Apr. 9, 2015) (attached to  Werman Decl. as Ex. 3); *Medley v. Am. Cancer Soc.*, No. 10 Civ. 3214, 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 2010); *Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011).

settlement under Rule 23 to FLSA settlements.  *See, e.g.*, *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("the standard for approval of an FLSA settlement is lower than for a class action under Rule 23" because failure to opt in does not prevent parties from bringing their own suits at a later date); *Hanifin v. Accurate Inventory & Calculating Serv., Inc.*, No. 11 Civ. 1510, 2014 WL 4352060, at *7 (N.D.N.Y. Aug. 20, 2014) ("[T]he high standard for approval of a class action under Rule 23 does not apply to an FLSA settlement.").  There is no need to require that the settlement provide for opt-outs or objections where individuals are not part of the settlement unless they decide to participate in it.  *See Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) ("The difference between a Rule 23 class action and a section 216(b) class action is . . . that in the latter the class member must opt in to be bound, while in the former he must opt out not to be bound.").

## II.    The Settlement Is Fair and Reasonable and Should be Approved.

Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes.  *See Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-54 (11th Cir. 1982).  Courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  *See id.*; *Capsolas v. Pasta Res., Inc.*, No. 10 Civ. 5595, 2012 WL 4760910, at *6 (S.D.N.Y. Oct. 5, 2012).  If the proposed settlement reflects a reasonable compromise over contested issues, it should be approved.  *See Lynn's Food Stores*, 679 F.2d at 1354.  In general, "FLSA settlements . . . [that] are reached as a result of contested litigation to resolve bona fide disputes" should be approved.  *Beckman*, 293 F.R.D. at 476; *see also Reyes v. Altamarea Group, LLC*, No. 10 Civ. 6451, 2011 WL 4599822, at *6 (S.D.N.Y. Aug. 16, 2011).

Here, the settlement is the result of hotly contested litigation, reached after significant motion practice, and was resolved through arm's-length negotiations facilitated by an

experienced mediator.  *See* Werman Decl. ¶ 52; *see also, e.g.*, *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2010 WL 5507892, at *7 (S.D.N.Y. Dec. 21, 2010), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (settlement is result of "contested litigation and arm's length negotiation . . . [after] the parties engaged in a 19-hour mediation session with an experienced mediator"); *Campos v. Goode*, No. 10 Civ. 0224, 2011 WL 9530385, at *6 (S.D.N.Y. Mar. 4, 2011) (FLSA settlement approved after "the parties engaged in mediation with an experienced mediator in an effort to reach a resolution").

The settlement of $3,950,000 represents a significant percentage of the recovery that Plaintiffs would have achieved had they prevailed on their claims and survived an appeal, and a substantial portion of what Defendant would be required to pay if faced with a judgment.  Werman Decl. ¶ 53.  Plaintiffs' Counsel estimates that the Gross Settlement Amount represents approximately 44.25% of Plaintiffs' lost wages.  *Id.*  The average Net Settlement Award, after the payment of attorneys' fees and expenses, is approximately $480.00.  *Id.*

This settlement is reasonable in light of the considerable risk that Plaintiffs face.  "Litigation inherently involves risks."  *In re PaineWebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997).  Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."  *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).

Although Plaintiffs believe their case is strong, it is subject to considerable risk.  First, there was a risk that Plaintiffs would not succeed in maintaining the FLSA collective and/or certifying state law classes through trial.  *See Vaccaro v. New Source Energy Partners L.P.*, No. 15 Civ. 8954, 2017 WL 6398636, at *5 (S.D.N.Y. Dec. 14, 2017) ("The process of class

12

certification would have subjected plaintiff to considerably more risk.") (internal quotation marks omitted).  Although Plaintiffs disagree, Defendant would likely argue that differences among its various restaurants and the work performed by Tipped Workers varied from person to person or restaurant to restaurant, and that such differences would preclude class or collective certification, or would warrant decertification.  *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 9380874, at *4 (S.D.N.Y. Sept. 21, 2011) (finding "[t]he risk of obtaining and maintaining class status throughout trial" in a class and collective action wage and hour settlement "weigh[ed] in favor of final approval").

Second, a trial on the merits would involve significant risks for Plaintiffs on liability issues for their side work and dual job claims under the FLSA.  Though two Circuits have ruled that courts should give deference to the Department of Labor's "dual job" regulation and "side work" interpretation, on which Plaintiffs rely in this case, *see Fast v. Applebee's Int'l, Inc.*, 638 F.3d 872, 880 (8th Cir. 2011); *Marsh*, 905 F.3d 610, the Second Circuit has not ruled on this issue.  Moreover, the U.S. Department of Labor ("DOL") recently issued an opinion letter purporting to eliminate the 20% threshold used to determine whether a worker is entitled to the full minimum wage under the FLSA for the performance of non-tipped work.  Plaintiffs strongly dispute whether this letter, which represents an abrupt and arbitrary shift in the DOL's longstanding position, will have any impact on courts' analyses, however no courts have yet analyzed this opinion letter and it presents a risk to Plaintiffs.  Defendant, on the other hand, contends that this letter is a reasonable position regarding "dual job" and "80/20" issues and is entitled to deference by this Court.

Third, a trial on the merits would involve significant risks for Plaintiffs as to damages. Plaintiffs would have to establish the total amount of time Tipped Workers at hundreds of

restaurants spent more than 20% of their shift performing side work, or the amount of time spent performing dual jobs, which is a complicated analysis even with the benefit of Defendant's restaurant-level time records.

The proposed allocation of the settlement is also reasonable. It reflects a proportion of damages owed to Plaintiffs based on the number of hours they worked for Defendant for which Defendant took the tip credit, which is a reasonable approximation of each Plaintiff's damages. Ex. 1 (Settlement Agreement) ¶ 3.4(D) (allocation plan); *see, e.g.*, *Soto v. Wings 'R Us Romeoville, Inc.*, No. 15 Civ. 10127, 2018 WL 1875296, at *1 (N.D. Ill. Apr. 16, 2018) (approving a collective action minimum wage settlement agreement with an allocation formula based on the number of hours the collective members worked and had a tip credit taken from their wages) (settlement agreement at ECF No. 141-1); *Knox*, 2017 WL 3834929, at * 1 (approving a collective action minimum wage settlement agreement with an allocation formula based on the number of hours the collective members worked and had a tip credit taken from their wages) (settlement agreement at ECF No. 170-1).

The Court should also approve the proposed Settlement Notice. *See* Ex. 1 (Settlement Agreement), Ex. A (Settlement Notice). The proposed Settlement Notice sufficiently informs Plaintiffs of the allocation formula, the requirement that they must cash the accompanying Settlement Check to participate, the consequences of non-participation, the monetary amount to which they are entitled under the Settlement Agreement, the scope and mechanism of the release of claims, the request for attorneys' fees and costs, and other terms of the Settlement Agreement. *See, e.g.*, *Morris v. Affinity Health Plan, Inc*., No. 09 Civ. 1932, 2011 WL 6288035 (S.D.N.Y. Dec. 15, 2011) ("The Proposed Notice is appropriate because it describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific

14

Case 6:15-cv-06340-CJS-MWP   Document 253   Filed 04/26/19   Page 22 of 30

information regarding the date, time, and place of the final approval hearing."); *In re Milos Litig.*, No. 08 Civ. 6666, 2010 WL 199688, at *1 (S.D.N.Y. Jan. 11, 2010) (notice should "provide[] accurate and timely notice concerning the pendency of the collective action, so that [an individual receiving the notice] can make an informed decision about whether to participate") (internal quotation marks and citation omitted); In re Michael Milken & Assocs. Sec. Litig., 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notices "need only describe the terms of the settlement generally"); *Bozak*, 2014 WL 3778211, at *2-3 (approving a FLSA notice providing notice of settlement terms and options facing collective); *see also Prena*, 2015 WL 2344949, at *1 (approving one-step settlement notice when it was "sufficiently in plain English to explain the important points: the terms of the settlement, the allocation formula, the amount of the entitlement, how to opt-in, and that cashing the check is equivalent to releasing the claim").

## III.    The Service Payments Should Be Approved as Fair and Reasonable.

Service Payment Recipients request approval of Service Payments for their service to the settlement collective in this litigation.  The Service Payments recognize the time and effort Plaintiffs expended in furtherance of this litigation and settlement, including assisting with counsel's investigation, responding to written discovery demands, and preparing for and attending depositions.  Werman Decl. ¶ 55.

Service payments are appropriate because plaintiffs in class and collective action lawsuits, like Service Payment Recipients here, play a crucial role in bringing justice to those who would otherwise be hidden from judicial scrutiny.  *Scovil v. FedEx Ground Package System, Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *6 (D. Me. Mar. 14, 2014) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit.").  This is especially true in employment litigation.  *See Bozak*, 2014 WL 3778211, at *4 ("'[I]n employment

15

litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."' (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007))); *see generally* Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Pol'y J. 395 (2006). Each of the Service Payment Recipients aided in the litigation through discovery, including participating in formal written discovery and depositions. Werman Decl. ¶ 55.

Service payments serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g.*, *Sewell v. Bovis Lend Lease, Inc.*, No. 09 Civ. 6548, 2012 WL 1320124, at *15 (S.D.N.Y. April 16, 2012) (approving service payments of $15,000 and $10,000 in wage and hour class and collective action settlement). Courts routinely approve service payments in similar amounts or more than Plaintiffs seeks here. *See, e.g.*, *id.* at *14-15 (approving service payments of $15,000 and $10,000); *Toure v. Amerigroup Corp.*, No. 10 Civ. 5391, 2012 WL 3240461, at *6 (E.D.N.Y. Aug. 6, 2012) (approving awards of $10,000 for each class representative); *Lovaglio v. W & E Hospitality, Inc.*, No. 10 Civ. 7351, 2012 WL 2775019, at *4 (S.D.N.Y. July 6, 2012) (approving service awards of $10,000 for each named plaintiff). The payment amounts to just 3.59 percent of the total recovery, which is a reasonable percentage. *See, e.g.*, *Parker v. Jekyll and Hyde Entertainment Holdings, LLC*, No. 08 Civ. 7670, 2010 WL 532960, at *2 (S.D.N.Y Feb. 9, 2010) (finding that service awards totaling 11% of the total recovery are reasonable "given the value of the representatives' participation and the likelihood that class members who submit claims will

still receive significant financial awards"); *Reyes*, 2011 WL 4599822, at *9 (approving awards

representing approximately 16.6% of the settlement); *Frank v. Eastman Kodak Co.*, 228 F.R.D.

174, 187-88 (W.D.N.Y. 2005) (approving award of approximately 8.4% of the settlement).

**IV.     The Court Should Approve Plaintiffs' Attorneys' Fees and Costs as Fair and
          Reasonable.**

    **A.      The Court Should Award Attorneys' Fees As a Percentage of the Fund.**

Plaintiffs' request for one-third of the common fund settlement as attorneys' fees plus

reasonable costs and expenses is reasonable.  When counsel's efforts result in the creation of a

common fund, counsel is "entitled to a reasonable attorney's fee from the fund as a whole."

*Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980); *Wal-Mart Stores v. Visa U.S.A., Inc.*, 396

F.3d 96, 121 (2d Cir. 2005); *Sukhnandan v. Royal Healthcare of Long Island LLC*, No. 12 Civ.

4216, 2014 WL 3778173, at *9 (S.D.N.Y. July 31, 2014); *Sewell*, 2012 WL 1320124, at *10; *see

also In re Colgate-Palmolive Co. ERISA Litig.*, 36 F. Supp. 3d 344, 348 (S.D.N.Y. 2014)

("Under the percentage method, the fee is a reasonable percentage of the total value of the

settlement fund created for the class.").  Recovery of fees based on the percentage of the fund

method "permits litigants or lawyers who recover a common fund for the benefit of persons other

than themselves to obtain reasonable attorney's fees out of the fund, thus spreading the cost of

the litigation to its beneficiaries."  *In re Zyprexa Prods. Liab. Litig.*, 594 F.3d 113, 128 (2d Cir.

2010).  Although there are two ways to compensate attorneys in common fund cases for

successful prosecution of statutory claims – the lodestar method and the percentage-of-the-fund

method – the trend in the Second Circuit is to use the percentage of the fund method in common

fund cases.  *Wal-Mart Stores, Inc.*, 396 F.3d at 121; *see also In re Rite Aid Corp. Securities

Litig.*, 396 F.3d 294, 300 (3rd Cir. 2005) ("The percentage-of-recovery method is generally

favored in common fund cases because it allows courts to award fees from the fund 'in a manner

that rewards counsel for success and penalizes it for failure.'").  It is especially appropriate to use a common fund approach in cases based on fee shifting statutes when the "settlement fund is created in exchange for release of the defendant's liability both for damages and for statutory attorneys' fees . . . ."  *Skelton v. General Motors Corp.*, 860 F.2d 254, 256 (7th Cir. 1988); *accord Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 564 (7th Cir. 1994).  Here, the settlement releases statutory claims to fees under the FLSA and parallel state wage and hour laws.

The percentage-of-the-fund method in common-fund cases is preferred because it promotes judicial economy.  Specifically, the percentage-of-the-fund method promotes early resolution of cases and removes the incentive for plaintiffs' lawyers to engage in wasteful litigation to increase their billable hours.  *See Wal-Mart Stores, Inc.*, 396 F.3d at 121 (explaining that the percentage method "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation" (quoting *In re Lloyd's Am. Trust Fund Litig.*, No. 96 Civ. 1262, 2002 WL 31663577, at *25 (S.D.N.Y. Nov. 26, 2002)); *accord In re Thirteen Appeals Arising out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 307 (1st Cir. 1995) ("[U]sing the [percentage of the fund] method in a common fund case enhances efficiency . . . .").  Where attorneys' fees are limited to a percentage of the total, there is a strong disincentive for attorneys to "run up their hours."  *Wal-Mart Stores, Inc.*, 396 F.3d at 121 (quoting *Baffa v. Donaldson Lufkin & Jenrette Sec. Corp.*, No. 96 Civ. 0583, 2002 WL 1315603, at *1 (S.D.N.Y. June 17, 2002)).

Moreover, the percentage method preserves judicial resources because it permits courts to focus on the benefit conferred upon a class or collective rather than the cumbersome task of reviewing complicated and lengthy billing documents.  *See In re Thirteen Appeals*, 56 F.3d at

307 ("[T]he [percentage of the fund] method permits the judge to focus on 'a showing that the fund conferring a benefit on the class resulted from' the lawyers' efforts." (quoting *Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991))); *In re Lloyd's Am. Trust Fund Litig.*, 2002 WL 31663577, at *25 (noting that the "percentage method . . . benefits both litigants and the judicial system" in that it "avoids the wasteful and burdensome process-to both counsel and the courts-of preparing and evaluating fee petitions").

**B.      Analysis of the Market for Legal Services Supports Plaintiffs' Request.**

The percentage-of-the fund method is consistent with, and is intended to mirror, the private marketplace for negotiated contingent fee arrangements. *Kirchoff v. Flynn*, 786 F. 2d 320, 324 (7th Cir. 1986) ("When the 'prevailing' method of compensating lawyers for 'similar services' is the contingent fee, then the contingent fee *is* the 'market rate.'") (emphasis in original).

Here, Plaintiffs' Counsel undertook the representation on a purely contingent basis. Werman Decl. ¶ 31. Plaintiffs' Counsel executed a fee arrangement with the Named Plaintiffs that entitled Plaintiffs' Counsel to one-third of any recovery. *Id.* "Thus, the Court knows what private plaintiffs would have negotiated with their lawyers, had bargaining occurred at the outset of the case because the Named Plaintiffs contracted for Plaintiffs' Counsel to be compensated with the amount Plaintiffs' Counsel now seek." *See Castillo v. Noodles & Co.*, No. 16 Civ. 03036, 2016 WL 7451626, at *4 (N.D. Dec. 23, 2016). Because the Plaintiffs negotiated an attorneys' fees arrangement at the start of the litigation, the presumption of market-rate reasonableness applies. *See Briggs*, 2016 WL 7018566, at *4.

Courts in the Second Circuit regularly find fee requests of one-third of the common fund or settlement amount to be reasonable. *See, e.g.*, *Cohan v. Columbia Sussex Mgmt., LLC*, No. 12 Civ. 3203, 2018 WL 4861391, at *4 (E.D.N.Y. Sept. 28, 2018) ("[C]ourts in this Circuit have

routinely granted requests for one-third of the fund in cases with settlement funds substantially

larger than this one." (alteration added) (quoting *Johnson v. Brennan*, No. 10 Civ. 4712, 2011

WL 4357376, at *19 (S.D.N.Y. Sept. 16, 2011))); *Chavarria v. N.Y. Airport Serv., LLC*, 875 F.

Supp. 2d 164, 179 (E.D.N.Y. June 25, 2012) (finding plaintiffs' counsel's request for one-third

of the fund "well within the range accepted by courts in this Circuit" (quoting *Maley v. Del Glob.*

*Techs. Corp.*, 186 F. Supp. 2d 358, 369 (S.D.N.Y. 2002))); *Alleyne v. Time Moving & Storage*

*Inc.*, 264 F.R.D. 41, 60 (E.D.N.Y. 2010) ("[T]he Court finds that attorney's fees of one third of

the settlement fund . . . are reasonable."); *Beckman*, 293 F.R.D. at 477 (stating that plaintiffs'

counsel's request for one-third of the fund was "consistent with the norms of class litigation in

this circuit" (quoting *Gilliam v. Addicts Rehab. Ctr. Fund*, No. 05 Civ. 3452, 2008 WL 782596,

at *5 (S.D.N.Y. March 24, 2008))).

Moreover, Plaintiffs' Counsel's request for one-third of the settlement fund as attorneys'

fees and additional costs and litigation expenses is reasonable in light of the significant benefit

their efforts conferred on the collective.  The Settlement Agreement provides that Defendant will

pay a Gross Settlement Amount of $3,950,000.  Werman Decl. ¶ 26.  By Plaintiffs' Counsel's

estimation, the $3,950,000 guaranteed settlement amount represents approximately 44.25% of

the collective's lost wages.  *Id.* ¶ 53.  This recovery is significant in light of the risk that

litigation may have yielded little or no recovery at all.

The lodestar "cross-check" further supports an award of one-third of the settlement fund.

*See Wal-Mart Stores, Inc.*, 396 F.3d at 123 ("As a 'cross-check' to a percentage award, courts in

this Circuit use the lodestar method."); *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d

Cir. 2000) ("[W]e encourage the practice of requiring documentation of hours as a 'cross check'

on the reasonableness of the requested percentage.").  As part of the cross-check, the lodestar is

20

determined by multiplying the hours reasonably expended on the case by a reasonable hourly rate. *Wal-Mart Stores, Inc.*, 396 F.3d at 121. In calculating the lodestar for cross-check purposes, "the hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger*, 209 F.3d at 50. Rather, "the reasonableness of the claimed lodestar can be tested by the court's familiarity with the case." *Id.*

Plaintiffs' request for one-third of the settlement fund, or $1,316,666.65, is a *negative* multiplier of 21.39% of their $6,514,600.55 lodestar. Werman Decl. ¶ 48. Plaintiffs' Counsel spent over 15,057.51 hours over 3 years litigating and settling this matter. Werman Decl. ¶ 33; Swartz Decl. ¶ 13. The time spent by Plaintiffs' Counsel is described in declarations and summaries of time records. *See* Werman Decl. ¶ 33 (Werman Salas Fee Summary); Swartz Decl. ¶ 13 (O&G Fee Summary). Courts regularly grant awards and lodestar multipliers far exceeding what they seek in this matter. *See, e.g.*, *Sewell*, 2012 WL 1320124, at *13 ("Courts commonly award lodestar multipliers between two and six."). Furthermore, the lodestar is "even more reasonable than it appears at first glance" because Plaintiffs' Counsel will likely be "called upon to perform work" after settlement approval, which will further reduce the lodestar multiplier. *Beckman*, 293 F.R.D. at 482.

### C. The Court Should Also Approve Payment of Plaintiffs' Counsel's Expenses.

Finally, Plaintiffs' Counsel's request for reimbursement of $286,016.02 in out-of-pocket expenses to be paid from the Gross Settlement Amount is reasonable and should be approved. *See* Ex. 1 (Settlement Agreement) ¶ 3.2(A). "Attorneys may be compensated for reasonable out-of-pocket expenses incurred and customarily charged to their clients, as long as they were incidental and necessary to the representation of those clients." *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (internal quotation marks and citation omitted); *see also Diaz v. E. Locating Serv. Inc*, No. 10 Civ. 4082, 2010 WL 5507912 at

*8 (S.D.N.Y. Nov. 29, 2010) ("Courts typically allow counsel to recover their reasonable out-of-pocket expenses.").  Here, Plaintiffs' Counsel's actual expenses of $286,016.02 were incidental and necessary to the representation of the collective.  Werman Decl. ¶ 59.  These expenses include the cost of mailing opt-in notice to more than 60,000 potential opt-in plaintiffs, transportation, travel expenses, deposition transcripts, working meals, photocopies, electronic research, and Plaintiffs' share of the mediator's and Court's fees.  Werman Decl. ¶ 59; Swartz Decl. ¶ 30 (O&G Costs Summary).

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court: (1) approve as fair and adequate the settlement set forth in the Settlement Agreement; (2) approve Service Payments for Service Payment Recipients; (3) approve attorneys' fees of one-third of the settlement plus reimbursement of reasonable costs and expenses of $286,016.02; (4) approve the fees and costs of Rust Consulting, Inc., the third-party Settlement Administrator; and (5) incorporate the other terms of the Settlement Agreement.

Dated: April 26, 2019               Respectfully submitted,

                                  /s/ Douglas M. Werman
                                  Douglas M. Werman

                                  **WERMAN SALAS P.C.**
                                  Douglas M. Werman- dwerman@flsalaw.com
                                  Maureen A. Salas -msalas@flsalaw.com
                                  77 West Washington St., Suite 1402
                                  Chicago, Illinois 60602
                                  (312) 419-1008

                                  **OUTTEN & GOLDEN LLP**
                                  Justin M. Swartz - jms@outtengolden.com
                                  685 Third Avenue, 25th Floor
                                  New York, NY 10017
                                  (212) 245-1000

**OUTTEN & GOLDEN, LLP**
Sally J. Abrahamson
601 Massachusetts Ave. NW, Suite 200W
Washington, DC 20001
(202) 847-4400
sabrahamson@outtengolden.com

*Attorneys for Plaintiffs and the Collective*